

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00082-CV

———————————————

J-W POWER COMPANY, Appellant

V.

JACK COUNTY APPRAISAL DISTRICT, Appellee

On Appeal from the 271st District Court
Jack County, Texas
Trial Court No. 19-07-077

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion on Remand by Justice Bassel

## MEMORANDUM OPINION ON REMAND

## I. Introduction

In this appeal, we review a summary judgment that resolved competing motions by denying Appellant J-W Power Company's requested relief of ordering Appellee Jack County Appraisal District to remove various items of personal property—in the form of compressors used in the oil and gas industry—from its appraisal rolls and by granting Jack County's summary-judgment motion that J-W take nothing. Our resolution is driven by J-W's choice of remedy. When Jack County failed to appraise the compressors under a new tax valuation scheme, J-W protested that decision—exercising a remedy provided by the Tax Code that was designed to address the errors in tax treatment that J-W claimed that the appraisal district had committed. But J-W then failed to seek judicial review of the appraisal district's decision denying that protest. When the Texas Supreme Court later validated the new valuation scheme, J-W sought relief again but this time under a section of the Tax Code that provides a taxpayer the right to file a motion to correct an appraisal district's tax rolls; this remedy accords a longer time to seek relief but restricts the types of errors that may be corrected. Here, J-W sought relief based on the assertion that its compressors were subject to multiple appraisals and attacked whether the compressors existed in the form and at the location that the appraisal rolls of Jack County specified. The trial court concluded that J-W was not entitled to relief under

the remedy that it had relegated itself to, denied its motion for summary judgment, and granted Jack County's motion for summary judgment that J-W take nothing.

We now write on the trial court's resolution for a second time. In a prior opinion, we held that J-W's remedy under a motion to correct was barred by res judicata. *See J-W Power Co. v. Jack Cnty. Appraisal Dist.* (*Jack Cnty. I*), 692 S.W.3d 518, 520–22 (Tex. App.—Fort Worth 2023) (mem. op.), *rev'd*, 691 S.W.3d 911 (Tex. 2024) (*Jack Cnty. II*). The supreme court reversed the opinion of another court of appeals that we had relied on for that holding[1] and then reversed our prior disposition and remanded the case for us to address the question of whether the trial court erred by granting Jack County's motion for summary judgment and by denying J-W the relief that it sought in its motion to correct. *See Jack Cnty. II*, 691 S.W.3d at 911.

We requested briefing on remand, and J-W raises four issues in its present brief:

> (1)     Whether Jack [County] could appraise individual units of [Dealer's Heavy Equipment Inventory] at full market value if some of those units [we]re physically located in Jack County in the same tax years that the dealer maintain[ed] its [Dealer's Heavy Equipment Inventory] in Palo Pinto County?

---

[1] *See J-W Power Co. v. Sterling Cnty. Appraisal Dist.* (*Sterling Cnty. I*), 684 S.W.3d 480, 486–87 (Tex. App.—Austin 2022) (mem. op.), *rev'd*, 691 S.W.3d 466 (Tex. 2024) (*Sterling Cnty. II*); *see also J-W Power Co. v. Irion Cnty. Appraisal Dist.* (*Irion Cnty. I*), 684 S.W.3d 488, 495–96 (Tex. App.—Austin 2022), *rev'd*, 691 S.W.3d 466 (Tex. 2024) (*Irion Cnty. II*). The Texas Supreme Court handed down a single opinion that reversed both *Sterling Cnty. I* and *Irion Cnty. I*. For ease of reference, we will refer to that opinion as *Sterling Cnty. II*, but we set forth this history here so that our later references to the third opinion in *Irion Cnty.* (the opinion on remand) make sense.

3

(2)     Whether, as a matter of law, J-W Power's Inventory existed within Jack County in the form or at the location noted on Jack [County's] appraisal roll?

(3)     Whether the Inventory, appraised as a whole in Palo Pinto County, was subject to multiple appraisals due to Jack [County's] appraisal of individual units during the 2013[–2016] tax years?

(4)     Whether Jack [County] possesses power to devise its own [Dealer's Heavy Equipment Inventory] filing standards [that] are neither authorized nor contemplated by [S]ections 23.1241[ and 23.124] of the Texas Tax Code and to apply them on behalf of another county?

We will address the substance of J-W's issues but will do so within the framework of the specific grounds for relief that it invoked in its motion to correct. Using that framework, we hold that—for the most part—the trial court did not err by rendering a summary-judgment disposition and concluding that J-W was not entitled to relief:

- We mostly reject J-W's argument that the compressors were subject to "multiple appraisals of a property in the tax years in controversy." *See* Tex. Tax Code Ann. § 25.25(c)(2). We interpret the term "multiple appraisals" to mean being placed on an appraisal district's appraisal rolls valued as J-W contends it should have been valued and not to mean that a property should have been appraised in a certain way if an appraisal district did not do so. The compressors were not appraised by another appraisal district under the valuation scheme that J-W argues applies when it filed its motion to correct. Eventually, the other appraisal district did appraise a limited number of compressors as J-W argued they should and created an account showing that treatment with respect to the specifically itemized compressors. We hold that there were multiple appraisals only to the extent that specific compressors placed on another county's rolls were also on Jack County's appraisal rolls during the same tax years.

4

- We reject J-W's argument that the compressors listed on the Jack County Appraisal District's rolls did not exist at a location in Jack County. As used in the context of a motion to correct, "location" means the property's physical location and not its "tax situs," i.e., where the property is subject to taxation. J-W's motion for correction, which was predicated on a claim that the compressors were not located in Jack County, fails.

- We reject J-W's argument that the compressors listed on the Jack County Appraisal District's rolls did not exist in the same "form" that they were described on Jack County Appraisal District's rolls. Case law has long interpreted the term "form" to mean the physical description on the appraisal rolls using the Tax Code's definitions of the property—in this case the definition being personal property. Though the compressors might be subject to a different valuation scheme, they are and remain personal property as defined by the Tax Code. J-W's motion for correction, which was predicated on its claim that the compressors did not exist in the form that they were described on the Jack County appraisal rolls, fails.

Accordingly, for the compressors that appear on both Jack County's and another county's appraisal rolls—which turns out to be fourteen[2] compressors—we reverse and remand for proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.

---

[2]Jack's brief states that there was an overlap of zero compressors for what it had appraised and as to what J-W had reported in tax year 2013 because J-W reported none, that there was an overlap of one compressor in tax year 2014, that there was an overlap of ten compressors in tax year 2015, and that there was an overlap of one compressor in tax year 2016. This creates a total overlap of twelve rather than the figure of fourteen that we quantify as the total overlap in our holding based on the agreed judgment.

## II. Legal, Factual, and Procedural Background[3]

### A. Legal Background

To contextualize the analysis that follows, we describe two scene-setting aspects of the controversy. Both relate to unique features of the Texas Tax Code dealing with ad valorem tax law. The first deals with a change in how the compressors at the core of the parties' dispute are valued for tax purposes and in what county the compressors are taxed—changes that have driven a more than decade-long controversy in Texas courts. The second discusses the methods of review provided by the Tax Code as an introduction to explain why the narrower option that J-W selected in this case drives our analysis.

### 1. We set forth the history of Dealer's Heavy Equipment Inventory valuation and the litigation involving it.

The legislature's change in the method of valuing a certain type of personal property for tax purposes and the history of the litigation involving that change drives

---

[3]As noted above, the administrative entity that denied J-W relief was the Jack County Appraisal Review Board. *See* Tex. Tax Code Ann. § 25.25(c) (stating that "[t]he appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll for any of the five preceding years to correct" the issues raised by J-W below). But the petition to obtain judicial review of an Appraisal Review Board (ARB) decision is brought against the appraisal district itself. *See id.* § 42.21(b) ("Any other petition for review under this chapter must be brought against the appraisal district."). For ease of reference and unless necessary for context, we will refer to the Jack County Appraisal District and the Jack County Appraisal Review Board as Jack and the Palo Pinto Appraisal District as Palo Pinto.

J-W's appeal. A recent opinion by the San Antonio Court of Appeals involving J-W

and the issues we face in this appeal summarized that history:

> Dealer's heavy equipment inventory is, as the name implies, heavy equipment a dealer owns and may lease to its customers. *See* Tex. Tax Code Ann. § 23.1241(a)(2). It often happens that a dealer operates out of one county and leases its heavy equipment to a customer for use in another county. *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 574 (Tex. 2018).[4] When that happens, questions may arise about which county has authority to tax the heavy equipment. *See id.*
>
> In 2011 and before, counties assessed taxes on individual equipment that was used in their jurisdictions as business personal property. *See id.* In [the] 2011 amendments to the Texas Tax Code, however, the legislature provided that all equipment, including leased equipment, that met the definition of dealer's heavy equipment inventory should be taxed collectively as inventory. *See* Tex. Tax Code Ann. §§ 23.1241, 23.1242. It also authorized the county where the dealer maintains the inventory to tax that inventory rather than the various counties where the individual pieces of equipment might be physically located. *See id.*
>
> Believing this statutory scheme to be unconstitutional, several appraisal districts continued to appraise dealer's heavy equipment inventory as business personal property. *See, e.g., EXLP Leasing*, 554 S.W.3d at 574; *Ward [Cnty.] Appraisal Dist. v. EES Leasing LLC*, 563 S.W.3d 203, 204 (Tex. 2018) . . . ; *Reeves [Cnty.] Appraisal Dist. v. MidCon Compression, L.L.C.*, 563 S.W.3d 207, 208 (Tex. 2018) . . . ; *Reeves [Cnty.] Appraisal Dist. v. Valerus Compression Servs.*, 563 S.W.3d 210, 211 (Tex. 2018) . . . ; *Loving [Cnty.] Appraisal Dist. v. EXLP Leasing, LLC*, 563 S.W.3d 213, 214 (Tex. 2018) . . . . Many dealers protested those appraisals and appealed to district courts. That litigation resulted in the 2018 opinion of the Supreme Court of Texas in *EXLP Leasing* rejecting the Appraisal District's arguments that [S]ections 23.1241 and 23.1242 were unconstitutional. *See* 554 S.W.3d at 574.

[4]References to *EXLP Leasing* that appear in the discussion that follows are to the Texas Supreme Court opinion and not the one involving Loving County that is briefly mentioned below.

*J-W Power Co. v. Duval Cnty. Appraisal Dist.*, No. 04-21-00172-CV, 2022 WL 789345, at *1 (Tex. App—San Antonio Mar. 16, 2022, no pet.) (mem. op.). The dispute between J-W and Jack stems from the fact that the Dealer's Heavy Equipment Inventory (DHEI) tax scheme values inventory as a whole based on the revenue it generates while the traditional, default method bases ad valorem tax on the market value of each individual unit. *See* Tex. Tax Code Ann. §§ 21.02, 23.1241, 23.1242. The DHEI valuation scheme produces a much lower amount of tax that is owed, and J-W contends that it is subject to unjust double taxation if compressors properly valued under the DHEI scheme in Palo Pinto are taxed as individual units of business personal property in Jack.

### 2. We set forth the remedies available to ad valorem taxpayers.

The second aspect of the controversy that sets our scene involves the unique remedies that a taxpayer has to challenge the actions of an appraisal district by seeking review before a local ARB.[5] In essence, one remedy provides the taxpayer a broad challenge that must be quickly exercised and then challenged by judicial review if the taxpayer is dissatisfied with the ARB's decision. The second avenue of challenge gives the taxpayer a longer time to seek relief but a narrower range of challenges, again with judicial review available should the taxpayer be dissatisfied with the result. As outlined above, the issues in this appeal involve the narrower, second avenue because

---

[5]A taxpayer's remedies to change the tax roll are specifically delimited by the Tax Code: "Except as provided by Chapters 41 and 42 of this code and by this section, the appraisal roll may not be changed." Tex. Tax Code Ann. § 25.25(a).

J-W first sought relief by invoking the broader remedy but failed to seek judicial review when the relief it sought was denied. It then invoked the second—but more circumscribed—remedy and sought judicial review when the ARB denied that relief.

The broader remedy is found in Chapter 41 of the Tax Code, and in essence, it "allows a property owner to file a protest for substantive challenges to property appraisals." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 40 (Tex. 2018) (citing Tex. Tax Code Ann. § 41.44). The more circumscribed remedy is found in Chapter 25 of the Tax Code; that remedy in essence "allows for the correction of errors that do not involve the substantive re-evaluation of a property's market value." *Id.* (citing Tex. Tax Code Ann. § 25.25).

Specifically, the supreme court described the salient features of the broad Chapter 41 remedy as follows:

> Chapter 41 gives property owners the right to protest a number of actions before the ARB, including the appraised value of their property[;] a determination of ownership[;] or "any other action of the chief appraiser, appraisal district, or [ARB] that applies to and adversely affects the property owner." Chapter 41 protests are broad in scope and weigh in favor of the property owner, placing the burden of establishing the value of the property on the appraisal district. However, such protests are subject to strict time limitations. In most cases, a property owner must file a notice of protest within thirty days of receiving notice of the appraised value—that is, before the final deadline for the appraisal records to be approved by the ARB.

*Id.* (citations omitted).

In turn, the supreme court described the narrower Chapter 25 remedy as follows:

9

Section 25.25, on the other hand, allows corrections after the time to protest has expired and appraisal rolls have been approved. Such corrections can be made only under limited circumstances, but they are afforded a more generous limitations period. Section 25.25(b) allows the chief appraiser to change the appraisal roll at any time to correct basic factual errors, such as a name or address, a determination of ownership, a description of property, or a clerical error. Section 25.25(c) allows the ARB to make similar changes on a motion of the property owner or the chief appraiser. [Tex. Tax Code Ann.] § 25.25(c). Under [S]ection 25.25(c), the ARB may order changes to the appraisal roll for the five preceding years.

*Id.* (citations omitted). Both the Chapter 41 and Chapter 25 remedies are subject to judicial review under a de novo standard. *See* Tex. Tax Code Ann. §§ 25.25(a), 42.01, 42.23(a).[6]

After outlining the specifics of each remedy, the supreme court gave its overview of how the Section 25.25 remedy winnows down the range of challenges from those available under Chapter 41:

---

[6]When seeking review of the denial of a motion to correct under Section 25.25(c), the taxpayer bears the burden of proof, as explained in an opinion from this court:

At trial, [the taxpayer] would have had the entire burden of proof to establish its claim under [S]ection 25.25(c) of the [T]ax [C]ode. *Compare* Tex. Tax Code Ann. § 25.25(c)(1), *and Matagorda Cnty. Appraisal Dist. v. Conquest Expl*[.] *Co.*, 788 S.W.2d 687, 693 (Tex. App.—Corpus Christi[–Edinburg] 1990, no writ) (stating that taxpayer may obtain benefit of tax roll correction "if he proves that § 25.25(c) applies to his situation"), *with* Tex. Tax Code Ann. § 41.43(a) . . . (placing burden of proof on appraisal district to establish value of property at administrative hearing).

*Stacy Fam. Enters., Inc. v. Tarrant Appraisal Dist.*, No. 02-13-00170-CV, 2013 WL 6564299, at *2 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (mem. op.).

Thus, the tax appraisal protest scheme evidences the [Texas] Legislature's intent to restrict substantive challenges to the appraisal rolls—making them "fixed" after the period for [C]hapter 41 protests has elapsed, with the exception of allowing limited error-correction. The limited corrections available under [S]ection 25.25(b) and (c) "include only objective and ministerial matters such as clerical errors." Such corrections "do not include the substantive reevaluation of a property's market value." In this way, the corrections permitted under [S]ection 25.25 stand in contrast to the substantive protests allowed by [S]ection 41.41. We agree with courts of appeals' holdings that the purpose of [S]ection 25.25 is to permit the correction of "objective, factual errors that would cause the payment of taxes based on the uncorrected records to be fundamentally unfair."

*Willacy Cnty. Appraisal Dist.*, 555 S.W.3d at 41 (citations and footnote omitted).

The supreme court has clarified during the history of this appeal that failure to pursue a protest to conclusion does not foreclose relief under a motion to correct. As the supreme court specifically held in the opinion that produced the remand to this court, the provisions of Section 25.25 do not preclude a motion to correct even though a taxpayer has filed a Chapter 41 protest. *See Sterling Cnty. II*, 691 S.W.3d at 468 ("As explained below, [Section 25.25(*l*)] guarantees the taxpayer's right to seek correction of the appraisal roll under [S]ection 25.25(c) whether or not—i.e., 'regardless of whether'—there has already been a Chapter 41 protest."). Though a motion to correct is not foreclosed by a prior protest, the supreme court reiterated that the motion to correct is subject to its own inherent limits:

Nevertheless, in cases where a demand for correction of the appraisal rolls remains viable despite a prior, unsuccessful Chapter 41 protest on the same topic, the [Texas] Legislature has expressed its preference that [S]ection 25.25(c) remain available to taxpayers. Section 25.25(c) is not without its own limits, of course. It contains a five-year statute of

11

limitations, and it applies only to certain kinds of corrections to the appraisal rolls. Tex. Tax Code [Ann.] § 25.25(c).

*Id.* at 474.

### B. Factual and Procedural Background

### 1. We set forth the tax treatment of the compressors that J-W claimed were subject to DHEI valuation and its efforts to invoke that valuation.

After the legislature adopted the 2011 revisions to the Tax Code creating the DHEI valuation scheme, Jack was one of the appraisal districts that considered that scheme to be unconstitutional and, as with other appraisal districts, continued to tax dealers for the individual leased compressors that were physically located within its district. The controversy below involves four tax years, 2013–2016, which fell during the period that the law was in flux over the validity of the DHEI valuation based on inventory rather than the default approach to valuation based on each individual unit's market value in the county where the compressor was physically located.

There is no controversy that the compressors meet the statutory definition of DHEI. But the summary-judgment record shows that both Palo Pinto and Jack appraised J-W's compressors as individual units during the four tax years in question. J-W does not argue that the compressors individually taxed as business personal property in Palo Pinto were different from the compressors individually taxed in Jack, nor does J-W provide an itemization of its compressors or explain in its brief whether any of those compressors were appraised in Jack.

12

During the four-year period at issue, J-W attempted to invoke the DHEI valuation scheme by claiming that Palo Pinto was the tax situs of the yard where the compressors comprising the inventory were based. J-W filed DHEI Tax Statements as specified by the DHEI statutes in many of the months during the four-year period. J-W also filed annual declarations as required by the statutes.[7] But J-W misunderstood the reporting requirements and instead of reporting monthly lease payments for all the units forming the more than 300 compressors in its inventory that were allegedly maintained at its Palo Pinto yard, it reported the lease payments for only the first month of a compressor's lease. During the years in controversy, Palo Pinto did not appraise the compressors under the DHEI scheme; as we will outline, Palo Pinto did not even create a DHEI account for J-W's compressor inventory until after the present suit was filed.

### 2. For tax years 2013, 2014, 2015, and 2016, J-W filed protests in Jack under Tax Code Section 41.41.

J-W challenged Jack's individual valuation of the units located in that county. J-W invoked the broader remedy afforded to a taxpayer under Chapter 41 of the Tax Code but did not seek judicial review of an adverse decision to those protests.[8]

---

[7]Although one of the annual declarations states that it is for tax year 2012, it appears to have been filed for tax year 2013.

[8]Tax Code Section 41.41 gives a property owner the option to bring a protest before an ARB regarding, among other acts, the "inclusion of the owner's property on the appraisal records." *See* Tex. Tax Code Ann. § 41.41(a)(3). A protest on that basis

13

Specifically, in May 2013, J-W filed a "Notice of Protest" with the Jack ARB. As the reasons for its protest, J-W checked boxes on the notice-of-protest form stating, "Property should not be taxed in this appraisal district or in one or more taxing units" and "Other." Next to "Other," J-W wrote that the property should be assessed as DHEI under Sections 23.1241 and 23.1242. Under a section for "facts that may help resolve your case," J-W wrote, "These leased compressors are part of a heavy equipment inventory" that qualify to be valued under Sections 23.1241 and 23.1242 and noted that "[a]ssessing them separately creates a double assessment." In other words, J-W protested that under the DHEI tax scheme, the taxable situs of its leased compressors was not in Jack County and that Jack should not be taxing J-W's DHEI. J-W filed similar protests in 2014, 2015, and 2016. In each case, the Jack County ARB determined that the appraisal records were correct and should not be changed. J-W did not appeal those determinations. *See* Tex. Tax Code Ann. § 42.01 (giving property owner the right to appeal an ARB's protest determination).

### 3. Once the Texas Supreme Court upheld the DHEI valuation scheme's constitutionality, J-W moved to have the Jack County ARB correct that county's appraisal rolls.

In March 2018, the Texas Supreme Court upheld the constitutionality of Sections 23.1241 and 23.1242 and rejected the constitutional challenges raised against the DHEI valuation scheme. *See EXLP Leasing*, 554 S.W.3d at 574. J-W then revived

---

may be based on the ground that the owner's property does not have a taxable situs in that taxing district. *See id.* § 41.42.

14

its challenges in Jack County and invoked the tax-roll-correction remedy that offers narrower grounds for relief but a longer window in which to seek relief "for any of the five preceding years." *See* Tex. Tax Code Ann. § 25.25(c). In December 2018, J-W filed a "Property Owner's Motion for Correction of Appraisal Roll" under Tax Code Section 25.25(c), complaining of Jack's appraisals of its DHEI in 2013–2016. *Id.* J-W invoked two grounds to correct the appraisal rolls contained in Section 25.25(c): (1) "multiple appraisals of a property in that tax year" and (2) "the inclusion of property that does not exist in the form or at the location described in the appraisal roll." *See id.* § 25.25(c)(2), (3). The motion to correct stated that its specific basis was as follows:

> All compressors in this county, including but not limited to the accounts listed in the attached schedule, were [DHEI]. Accordingly, the compressors should be valued and taxed under [S]ection[s] 23.1241 and 23.1242 of the Texas Tax Code. The appraisal district assessed these compressors separately as business personal property, which created a double assessment. Additionally, J-W Power did not own any other taxable personal property in this county for the tax years at issue.

The Jack County ARB denied relief.

### 4. J-W sued Jack, and the trial court granted summary judgment for Jack on unspecified grounds.

After the Jack County ARB denied J-W's motion to correct, J-W filed the suit below. It alleged that for the 2013–2017 tax years, J-W had self-reported its heavy equipment inventory in Palo Pinto County as DHEI and had made tax payments to

15

that county's appraisal district.[9] It further alleged that, for those same tax years, its DHEI had been listed on Jack's appraisal rolls as business personal property. It pleaded that Jack had willfully, intentionally, and arbitrarily assessed a tax on the property in those years in violation of Sections 23.1241 and 23.1242, and it asked for a refund for the relevant tax years and for attorney's fees. *See id.* § 42.43.

J-W then filed a traditional motion for partial summary judgment. It asserted that its summary-judgment evidence established that it is in the business of leasing field compressors for use in oil-and-gas production; that although some of its compressors were physically located in Jack County on January 1 of each tax year, it maintains its inventory of compressors in Palo Pinto County; and that it had tendered payments for each relevant tax year to Palo Pinto's taxing authority. It further asserted that Palo Pinto had been unlawfully taxing its compressors as business personal property but had corrected the assessment under a 2019 agreed final judgment and that J-W had paid the corrected amount of taxes due.

---

[9]There are two agreed judgments in the summary-judgment record: one between J-W and Palo Pinto and one between J-W and Jack. The Palo Pinto judgment plays a central role in our holdings. The Jack judgment does not. With respect to the Jack judgment, the petition in this suit also challenges Jack's action in the 2017 tax year; that tax year was apparently also the subject of a different suit, and that suit was resolved by an agreed judgment. In that judgment, Jack agreed that for certain property owned by J-W in tax year 2017, the taxable situs was in Palo Pinto County, and Jack agreed to correct its 2017 appraisal rolls. J-W's motion for summary judgment states, "On February 1, 2019, J-W Power's prior suit against [Jack] for its illegal appraisal of Dealer's Heavy Equipment for tax year 2017, cause number 17-08-109, was settled by an Agreed Final Judgment ('Agreed Judgment')."

Jack also filed a traditional motion for summary judgment. The motion asserted that Section 25.25 was not the appropriate vehicle to challenge taxable situs; that because J-W had not appealed the denial of its previous 2013–2016 protests under Section 41.41, it had failed to exhaust its judicial remedies; that its Section 25.25 motion constituted an impermissible attempt to reopen the ARB's 2013–2016 orders—an action that was barred by res judicata; and that J-W's DHEI Declarations to Palo Pinto County proved as a matter of law that the property was not the subject of multiple appraisals.

Both sides filed objections to the other side's evidence, but the trial court did not rule on the objections. The trial court signed an order that granted Jack's motion and denied J-W's motion without stating the grounds for its ruling.[10] J-W then filed this appeal.

### 5. We explain our initial decision, which was reversed by the Texas Supreme Court.

In a prior opinion, we affirmed the trial court's summary judgment on the basis of res judicata. *See Jack Cnty. I*, 692 S.W.3d at 525–26. As noted above, an opinion from the Austin Court of Appeals that we relied on for this holding was subsequently reversed by the Texas Supreme Court. *See Sterling Cnty. II*, 691 S.W.3d at 468. The Texas Supreme Court later issued a per curiam opinion reversing our prior opinion

---

[10]The trial court's judgment granting Jack County's motion for summary judgment that J-W take nothing made it unnecessary for that court to address J-W's claim for attorney's fees, refunds of taxes previously paid, and interest.

and remanding the case to this court "to consider issues [we] did not reach." *See Jack Cnty. II*, 691 S.W.3d at 911. The supreme court did the same with another opinion from this court and with opinions from other courts of appeals that had also relied on res judicata as the basis for their holdings. *See J-W Power Co. v. Wise Cnty. Appraisal Dist.*, 691 S.W.3d 923 (Tex. 2024); *J-W Power Co. v. Henderson Cnty. Appraisal Dist.*, 691 S.W.3d 910 (Tex. 2024); *J-W Power Co. v. Frio Cnty. Appraisal Dist.*, 691 S.W.3d 923 (Tex. 2024).

In essence, the remand to this court involves the question of whether J-W is entitled to have Jack's appraisal rolls corrected under Section 25.25(c). The supreme court explicitly left this question open by stating that "[i]n deciding that J-W Power's [S]ection 25.25(c) motions may proceed, we express no view of their ultimate merits." *Sterling Cnty. II*, 691 S.W.3d at 474; *see also Jack Cnty. II*, 691 S.W.3d at 911 ("The case is remanded to the court of appeals to consider issues it did not reach.").

### III. Analysis

**A.**     **We are not analyzing whether J-W's compressors were DHEI; we are reviewing only whether the trial court erred in its summary-judgment ruling that J-W was not entitled to have Jack's appraisal rolls corrected.**

J-W spends a large portion of its brief outlining why the compressors were inventory appraised under the DHEI scheme, how the Texas Supreme Court validated that scheme in *EXLP Leasing*, and how DHEI should be taxed in the situs where J-W maintained its inventory. It then outlines why Jack should not have

18

appraised the compressors under the Tax Code's default method of valuation based on the compressors' physical location and individual market value. J-W at least implies that if we do not sustain its issues, we will not be heeding the legislature's passage, and the supreme court's validation, of DHEI valuation. But in our context, that argument distracts from the review of a motion to correct that focuses not on what a property's tax treatment should have been (which is addressed by a protest under Chapter 41) but whether the taxpayer has shown itself entitled to have the appraisal rolls corrected. As noted, this avenue of error correction is much more circumscribed than a protest and turns on whether the appraisal roll is in error for the reason specified in Section 25.25 and not whether the basis used to place the property on the appraisal roll was proper. Thus, we review the trial court's summary judgment through that narrow prism and look to what errors *in the roll* are subject to correction and ultimately conclude that the trial court did not err—for the most part—in concluding that J-W was not entitled to an order directing Jack to correct its appraisal roll.

**B.      We set forth the standard of review that we apply to competing motions for summary judgment.**

In a summary-judgment case, the issue on appeal is whether the movant met the summary-judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.

19

2009). We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We also consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

When both parties move for summary judgment on the same issue and the trial court denies one motion but grants the other, we (1) review both motions and responses; (2) consider the evidence presented by both parties; (3) determine all questions presented; and (4) render the judgment the trial court should have rendered. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022).

20

**C.** **The trial court, with a few limited exceptions, properly granted summary judgment on J-W's contention that Jack's appraisal roll should be corrected to remove property subject to multiple appraisals.**

In what appears to be argument under its first, third, and fourth issues, J-W contends that once it made any filing in Palo Pinto referencing the DHEI valuation scheme, treatment of its compressors assigned to its Palo Pinto yard became self-actuating. According to J-W, every compressor assigned to the Palo Pinto yard was automatically appraised under the DHEI valuation, even though J-W failed to follow the requirements of the DHEI statutes and referenced only a miniscule portion of those compressors in its DHEI filings. J-W's argument continues that any compressor appraised by Jack was swept into DHEI valuation, even though (1) its compressors that were physically located in Palo Pinto County continued to be valued as conventional business personal property and (2) the only DHEI account on Palo Pinto's roll was created by an agreed judgment that was entered after Jack denied J-W's motion to correct and after J-W filed suit against Jack to appeal that denial. Under its self-actuating theory, because any compressor assigned to the Palo Pinto yard automatically became part of the DHEI inventory for that yard, any compressor assigned to the yard was part of the DHEI inventory—regardless of whether Palo Pinto actually had appraised the compressors as DHEI. Thus, according to J-W, any compressors assigned to the Palo Pinto yard and also individually valued as personal property by Jack were subject to multiple appraisals, and Jack should have granted

21

J-W's motion to correct the appraisal rolls under Tax Code Section 25.25(c)(2) that requires a correction of an appraisal roll for "multiple appraisals of a property in that tax year." *See* Tex. Tax Code Ann. § 25.25(c)(2). J-W also appears to argue that because Palo Pinto eventually agreed to a judgment that created a DHEI account for a limited number of the compressors maintained at the Palo Pinto yard for the years that Jack had valued certain of the compressors assigned to that yard as conventional personal property, it was error for the trial court not to grant its summary-judgment motion and order correction of the appraisal rolls by removing every compressor carried on Jack's appraisal rolls.

As noted above, a taxpayer has broad remedies if exercised quickly to challenge the appraised value of property. Section 25.25 is a much narrower remedy to correct basic factual errors. *See Willacy Cnty. Appraisal Dist.*, 555 S.W.3d at 40. One basis to correct the appraisal roll is "multiple appraisals of a property in [a] tax year." Tex. Tax Code Ann. § 25.25(c)(2). The first question that we deal with is what are "multiple appraisals"? We interpret the phrase to mean that the same property has actually been appraised multiple times in the same tax year by multiple appraisal districts. The phrase does not embrace an abstraction where a party thinks the property should have been appraised in a certain way but was not actually appraised by an appraisal district as the party thinks that it should have been. This conclusion is borne out by the terms of the Tax Code.

In the years in question, both Palo Pinto and Jack initially appraised individual compressors. Even if J-W argues that the compressors should have been appraised as DHEI, they were not subject to an appraisal as such. And in very recent opinions, the Austin Court of Appeals rejected J-W's arguments that attempted to equate the act of making filings under the DHEI statute as creating multiple appraisals because those filings may be a precursor to an appraisal, but they do not constitute an appraisal by an appraisal district that would support a multiple-appraisal claim. *See J-W Power Co. v. Sterling Cnty. Appraisal Dist. (Sterling Cnty. III)*, No. 03-21-00069-CV, 2024 WL 4982490, at *5 (Tex. App.—Austin Dec. 5, 2024, no pet. h.); *J-W Power Co. v. Irion Cnty. Appraisal Dist. (Irion Cnty. III)*, No. 03-21-00005-CV, 2024 WL 4982488, at *5 (Tex. App.—Austin Dec. 5, 2024, no pet. h.).

Not until J-W entered into an agreed judgment did a DHEI account even exist on Palo Pinto's appraisal rolls. But the judgment specified a limited number of compressors that were included in the account's DHEI treatment, and most of the compressors appraised by Jack were not on that list and thus were not subject to multiple appraisals. We will follow the resolution suggested by Jack in one of its summary-judgment pleadings and hold that the appraisal rolls should be corrected only with respect to the compressors that were listed in the agreed judgment and that were individually appraised by Jack.

We also address the holding from another court of appeals that the defective DHEI filings that J-W made in another county and that had similar failings to the

ones that J-W made in Palo Pinto did not self-actuate DHEI valuation. Our holding does not adopt that holding but references it as supporting the conclusion that the DHEI treatment for the compressors listed in the Palo Pinto agreed judgment extended only to the compressors listed in that judgment and not to every compressor that might theoretically be subject to DHEI treatment because it was allegedly maintained at J-W's Palo Pinto yard.

**1.** **We interpret the term "multiple appraisals" in Tax Code Section 25.25(c)(2) to mean the actual listing of the same property on multiple appraisal rolls during the same tax year.**

Looking to the words' plain meanings informed by their context, the Tax Code demonstrates that "appraisal" is a valuation process actually implemented by an appraisal district. *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 734 (Tex. 2024) ("In construing statutory text, our primary objective is to ascertain and give effect to the [Texas] Legislature's intent. In doing so, we look to the plain meaning of the statutory terms, informed by context, as the most reliable guide to the [Texas] Legislature's intent." (citation omitted)).

The very purpose of "appraisal districts" is "*appraising property* in the district for ad valorem tax purposes." Tex. Tax Code Ann. § 6.01(b) (emphasis added). The appraisal roll subject to correction by a Section 25.25(c) motion is made up of appraisal records; "[t]he appraisal records, as changed by order of the appraisal review board and approved by that board, constitute the appraisal roll for the district." *Id.*

24

§ 25.24. Obviously, the appraisal records referred to are those that were prepared by the appraisal district to reflect what property is taxable within a district and its appraised value because the Tax Code provides that "[b]y May 15 or as soon thereafter as practicable, the chief appraiser [of the appraisal district] shall prepare *appraisal records listing all property that is taxable in the district and stating the appraised value of each.*" *Id.* § 25.01(a) (emphasis added).

In turn, the Tax Code states that "'[a]ppraised [v]alue' means the value determined as provided by Chapter 23 of this code." *Id.* § 1.04(8). And the first section of Chapter 23 begins by noting that "[e]xcept as otherwise provided by this chapter, all taxable property *is appraised* at its market value as of January 1." *Id.* § 23.01(a) (emphasis added). Chapter 23 then goes through an elaborate process setting out the criteria for appraisal districts to use in making its appraisal determination, including personal property that is subject to DHEI valuation. *See generally id.* §§ 23.01–.9808.

After this appraisal process, the chief appraiser performs his or her duty to prepare the roll listing the property and its appraised values that we mentioned above. *Id.* § 25.01(a). Specifically, the form and content of the appraisal records that the appraiser must prepare includes "the *appraised value* of personal property." *Id.* § 25.02(a)(8) (emphasis added). In turn, "[t]he appraisal records, as changed by order of the [ARB] and approved by that board, constitute the appraisal roll for the district." *Id.* § 25.24. These statutes demonstrate that an "appraisal" is more than a party's

25

expressed desire that a property be valued in a certain way for tax purposes; it describes a process performed by an appraisal district to set a value that is in turn placed on the appraisal roll.[11]

Nothing about the DHEI valuation scheme suggests that an appraisal occurs in a different manner than what we have just outlined where property is appraised and its value is placed on the appraisal roll. DHEI remains personal property as that term is used in the Tax Code. Compressors subject to DHEI valuation are not a new species of property other than personal property; they still fall within the Tax Code's sweeping definition of personal property—"property that is not real property." *Id.* § 1.04(4). And the very terms of the DHEI statutes refer to DHEI as a type of personal property, albeit subject to a different method of determining its market value than other personal property; for example, the section of the Tax Code dealing with

---

[11]The Texas Supreme Court has described the appraisal process as follows:

The Tax Code also establishes a procedure for the appraisal and back-appraisal of property. Subject to limited exceptions, the chief appraiser must appraise all taxable property at market value as of January 1 each year[] and must determine whether exemptions should be granted based on the claimant's eligibility on that date. *See* Tex. Tax Code [Ann.] §§ 11.42, 11.43, 23.01. Once property is appraised and an exemption denied, the chief appraiser lists all taxable property and its appraised value. *See* [*id.*] § [25.]01. The chief appraiser's listing of all taxable property in the district and its appraisal value constitutes the appraisal records. *See id.* The chief appraiser submits the appraisal records to the review board, which reviews the records and hears challenges. *See* [*id.*] §§ 41.01–.03. When approved by the review board, these records become the appraisal district's tax roll. *See* [*id.*] § 25.24.

*Atascosa Cnty. v. Atascosa Cnty. Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex. 1999).

26

the computation of market value for DHEI provides that "[e]xcept for [DHEI], personal property held by a dealer is appraised as provided by the other sections of this code." *Id.* § 23.1241(d). If it is actually appraised under the DHEI scheme, DHEI should be listed as such on the appraisal records because it still falls within the ambit of the information required for the appraisal records that includes "the appraised value of personal property." *Id.* § 25.02(a)(8).

Indeed, until a piece of personal property is "appraised" as DHEI, it is subject to the default rule of valuation based on the usual market-value method for individual pieces of personal property. A court of appeals that dealt with J-W's same arguments held that the Tax Code provides a *default* rule for the valuation of personal property: "Section 21.02 applies to tangible personal property generally and provides the default rule that tangible personal property is taxable by a taxing unit if 'it is located in the unit on January 1 for more than a temporary period[.]'" *Duval Cnty. Appraisal Dist.*, 2022 WL 789345, at *4 (quoting Tex. Tax Code Ann. § 21.02).[12] Two recent opinions by the Austin Court of Appeals hold that until the billing and payment of DHEI taxes is implemented by an appraisal district, there is no appraisal under the DHEI appraisal scheme. *See Sterling Cnty. III*, 2024 WL 4982490, at *5; *Irion Cnty. III*, 2024 WL 4982488, at *5. The Austin Court held that "for the proper authorities to appraise

---

[12]At one point, J-W argues that "there was no business personal property in Jack County for Jack CAD to legally tax under [S]ection 21.02." It appears that J-W's argument is that DHEI is a new species of property and not an alternative method of valuing property. We disagree.

27

DHEI under the special statutory scheme, the authorities need have received the owner's prepayment, determined the applicable tax liability, applied to that amount the owner's prepayment, and then billed the owner for any deficiency or credited the owner for any overpayment." *See Sterling Cnty. III*, 2024 WL 4982490, at *5; *Irion Cnty. III*, 2024 WL 4982488, at *5.

The Austin court took the view that J-W's filings were merely the "precursors" to a DHEI appraisal but that no multiple appraisals ever occurred from the filings because they never reached the fruition of becoming an actual appraisal. *See Sterling Cnty. III*, 2024 WL 4982490, at *5; *Irion Cnty. III*, 2024 WL 4982488, at *5.

As the Austin court held,

> The declarations and monthly statements are but "precursors" to the proper authorities' appraisal tasks under the special appraisal scheme for DHEI. *See* Tex. Tax Code [Ann.] §§ 23.1241–.1242; *EXLP Leasing*, 554 S.W.3d at 583–84. Owners file the annual declaration, and they file the monthly statements along with a prepayment of tax on the DHEI. *See* Tex. Tax Code [Ann.] §§ 23.1241–.1242; *EXLP Leasing*, 554 S.W.3d at 583–84. Only afterward do the authorities then assess the tax burden attributable to the DHEI; apply the prepayments toward that amount; and either credit or bill the owner further, as necessary. *See EXLP Leasing*, 554 S.W.3d at 583–84. Only after "the taxing unit prepares the annual tax bill," *see id.* (citing Tex. Tax Code [Ann.] § 23.1242(h)), has the appraisal district conducted the appraisal task called for by the DHEI special appraisal scheme, *see id.* at 577. J-W Power in its reply brief refers to its annual declarations as the "appraisals" in Ector County, but that position cannot withstand the statutory language or *EXLP Leasing*. The annual declarations and monthly tax statements here thus do not raise a fact issue about whether Ector County authorities took the downstream step of appraisal.

*Sterling Cnty. III*, 2024 WL 4982490, at *5 (footnote omitted); *Irion Cnty. III*, 2024 WL 4982488, at *5 (footnote omitted).

Also, the process of ensuring that compressors are properly valued as DHEI stems from a concern that double taxation results if property subject to DHEI valuation were taxed under DHEI valuation in one county and then subject to the default valuation rules as personal property in another. This was the concern identified by the supreme court when it specified that property properly valued as DHEI has a tax situs only in the county where the property is properly valued as DHEI because "[o]therwise, dealers would face double or greater taxation when paying taxes on an entire inventory in every county where a unit of property is located. And application of the default situs provision would lead to exactly that result." *EXLP Leasing*, 554 S.W.3d at 584.

But until an appraisal district appraises a property as being a part of DHEI, the property is not actually taxed based under that appraisal scheme. Specifically, the tax assessor uses the information in the appraisal roll as follows: "[o]n receipt of notice of the tax rate for the current tax year, the assessor for a taxing unit other than a county shall calculate the tax imposed on each property included on the appraisal roll for the unit." Tex. Tax Code Ann. § 26.09(a). Further, "[t]he county assessor–collector shall use the appraisal roll certified to him as provided by Section 26.01 with

29

the added properties and values to calculate county taxes." *Id.* § 26.09(b).[13] Thus, if a compressor is still listed as an individual piece of personal property in the county where the yard is located that is the tax situs for DHEI, it is taxed not as DHEI but as individual pieces of personal property. In that circumstance, if the individual compressors are not subject to "multiple appraisals" by being placed on multiple appraisal rolls in the same tax year, they have not been taxed multiple times.

Further, double taxation must be more than theoretical because that concern does not arise until property is treated in a way that produces actual double taxation. As the supreme court has noted,

> [W]e do not presume double taxation merely because it is semantically possible to include one valuable aspect of the property in two different appraisal accounts. Instead, "evidence about what property was or was not included" in each appraisal account should be consulted to determine whether double taxation has in fact occurred.

*Bosque Disposal Sys., LLC v. Parker Cnty. Appraisal Dist.*, 555 S.W.3d 92, 97 (Tex. 2018). This reinforces our view that "multiple appraisals" for DHEI occur only after the property constituting inventory has been placed on the rolls as DHEI rather than under the circumstances argued for by J-W—that the mere expression of a desire for DHEI valuation creates "multiple appraisals."

And case law applying Section 25.25(c)(2) has dealt with situations in which property appeared on appraisal rolls multiple times. *See Hunt Woodbine Realty Corp. v.*

---

[13]Section 26.01 deals with the submission of the appraisal rolls to the taxing units. *See* Tex. Tax Code Ann. § 26.01.

30

*Dall. Cent. Appraisal Dist.*, No. 05-22-00182-CV, 2023 WL 2596074, at *1 (Tex. App.—Dallas Mar. 22, 2023, no pet.) (mem. op.) (reviewing a Section 25.25(c)(2) motion based on appraisal district's assessing parking lot's value as based on the value of real property and as part of an economic unit of a hotel that the parking lot served). Case law has also applied Section 25.25(c)(2) to circumstances in which multiple counties have appraised the same property on their appraisal rolls:

> In response to [appellant's] assertion that it is entitled to summary judgment on its multiple[-]appraisals grounds pursuant to [S]ection 25.25(c)(2), appellees contend, without authority, that a multiple appraisal can only occur if the same appraisal district appraised the same property more than once. However, nothing in the plain meaning of "multiple appraisals" so limits its interpretation. *See* Tex. Gov't Code Ann. § 312.002 . . . (providing that statutory words are given ordinary meaning); Merriam Webster Dictionary 486 (1997) (defining "multiple" as "more than one"). [Appellant's] summary[-]judgment evidence conclusively shows [that] it paid both Hunt County and Dallas County appraisal districts for the same property in tax year 1993. *See Brooks* [*Cnty.*] *Cent. Appraisal Dist. v. Tipperary Energy Corp.*, 847 S.W.2d 592, 599 (Tex. App.—San Antonio 1992, no writ) (interpreting [S]ection 31.11 of [T]ax [C]ode to authorize refund when overpayment by another entity results in "windfall" to taxing entity). Therefore, [appellant] carried its burden to show its entitlement to summary judgment as a matter of law under [S]ection 25.25(c)(2) . . . .

*GE Cap. Corp. v. Hunt Cnty. Appraisal Dist.*, No. 05-97-02192-CV, 2000 WL 348562, at *7 (Tex. App.—Dallas Apr. 5, 2000, no pet.) (not designated for publication); *see also Duval Cnty. Appraisal Dist.*, 2022 WL 789345, at *6 (citing *GE Capital* to reject J-W's claim that it was entitled to relief under Section 25.25(c)(2) because J-W's yard compressor inventory was never properly appraised as DHEI while individual compressors were carried on another county's appraisal roll as personal property

31

valued at market value). J-W has cited no case in which Section 25.25(c)(2) has been applied to a situation when there have not in fact been multiple appraisals by placing a property on multiple appraisal rolls.

And if we construe Section 25.25(c)(2) to address property that should have been valued using another appraisal scheme but was not actually appraised under that scheme, we would upend the balance of remedies provided by the Tax Code. Again, the Tax Code provides a remedy for a taxpayer to challenge an appraised value and tax situs, i.e., the tax treatment of property by an appraisal district. Here, J-W made that challenge in Jack but did not seek judicial review of it. If J-W can now use Section 25.25(c)(2) based on a claim that the compressors should have been on the Palo Pinto appraisal roll as DHEI—even though they were not listed on that county's appraisal rolls as DHEI—and that this is the basis for relief under the "multiple appraisal" provision of Section 25.25(c)(2), then we have allowed J-W a back door to challenge the value and situs. That is the protest that J-W opted not to pursue to fruition by seeking review of Jack's denial of the protest. This allowed Jack's appraisal rolls to become set and relegated J-W to a Section 25.25(c)(2) motion to correct, which does not require proof of improper tax treatment but proof of "multiple appraisals." Thus, we read "multiple appraisals" in Section 25.25(c)(2) to mean that property that has been appraised multiple times and that for this reason it is listed on multiple appraisal rolls during the same tax year.

32

**2.** **We set forth the summary-judgment evidence with respect to multiple appraisals and why we resolve that issue against J-W.**

Based on our definition of "multiple appraisals," the question becomes what the summary-judgment record shows on the question of whether the compressors that Jack appraised were subject to multiple appraisals because they also appeared on Palo Pinto's appraisal rolls. The summary-judgment record reveals the following path for Palo Pinto's appraisal treatment of J-W's compressors:

- In its initial motion, J-W attached the DHEI statements that it filed in Palo Pinto, but it also attached what it described as "tax bill records" for Palo Pinto. Those records span the 2013–2016 tax years, and the "legal information" in many of them states that they describe "compressors." But each of the statements referencing a compressor describes the property as "personal" and lists an individual market value. Rather than supporting J-W's position, J-W's evidence demonstrates that Palo Pinto did not appraise any compressors under a DHEI valuation scheme for the years at issue.

- In another summary-judgment filing, J-W added to its summary-judgment evidence by including the affidavit of the Chief Appraiser of the Palo Pinto Appraisal District. Attached to the affidavit were the Palo Pinto appraisal rolls for 2013–2016. Again, the rolls listed many compressors as "personal property." The appraiser also attached what she described as "[a]ll certified original and certified supplemental appraisal rolls for tax years 2013–2017 for personal property of J-W [P]ower Company, including but not limited to DHEI accounts listed in the Agreed Final Judgment dated July 23, 2019, J-W Power Company v. Palo Pinto Appraisal District, Cause No. C45644." Those records have a page that vaguely references "HEIT VALUE," which we assume means "Heavy Equipment Inventory Tax," and multiple pages of records also

33

have listings of various items of individual property with individual valuations.[14]

- As summary-judgment evidence, J-W also relied on the agreed judgment that it entered into with Palo Pinto.[15] The judgment initially makes a recitation that

---

[14]J-W glosses over the history of how Palo Pinto appraised the compressors with the sweeping statement in its brief that "Palo Pinto County, the statutorily authorized county, appraised and included on its rolls the Heavy Equipment Inventory of J-W Power for every tax year at issue." If the implication is that any compressors were appraised by Palo Pinto as DHEI before the entry of an agreed judgment, the statement is not borne out by the record. Before the judgment, Palo Pinto appraised the compressors at the appraised values of the individual compressors. The quoted statement in J-W's brief ignores when and how the DHEI was created, and J-W's implication that DHEI accounts existed throughout the tax years in question is wrong.

[15]Jack makes two arguments that we should disregard the agreed judgment.

First, Jack argues that J-W waived its argument based on the agreed judgment because it was not raised in its prior briefing. The issue was fairly subsumed within those issues raised by J-W, and we follow the instruction of the Texas Supreme Court that "appellate courts should reach the merits of an appeal whenever reasonably possible." *Gill v. Hill*, 688 S.W.3d 863, 869 (Tex. 2024), *cert. denied*, 2024 WL 4427206 (U.S. Oct. 7, 2024) (No. 24-76).

Second, Jack argues that Palo Pinto exceeded its powers by entering into the agreed judgment that added property to Palo Pinto's tax rolls for more than two prior years in violation of Section 25.21(a) of the Tax Code. *See* Tex. Tax Code Ann. § 25.21(a). At this point, we have a judgment rendered by a district court that appears valid on its face. Jack does not explain how we have the power to review whether it was error to render the judgment and, in essence, review a collateral attack on its validity without a showing that the judgment was for some reason void. *See In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020) ("A judgment is void, rather than voidable, "when it is apparent that the court rendering judgment 'had no jurisdiction [over] the parties or property, no jurisdiction [over] the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'"); *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("Only a void judgment may be collaterally attacked.").

[t]he [c]ourt finds that this suit pertains to properties owned by [J-W], which properties were included in the Palo Pinto County appraisal rolls for tax years 2013, 2014, 2015, 2016, and 2017. The properties are described in the Palo Pinto County appraisal rolls with description and/or property ID numbers below, which are the same properties described in [J-W's] original petition and all subsequent amended petitions. These properties will hereinafter be referred to as "the Subject Properties."

The judgment then lists ninety account numbers.[16] The account numbers listed correlate to individual items of personal property in the other documents attached as J-W's summary-judgment evidence from the account and appraisal roll records of Palo Pinto. The judgment continues with recitations showing that "the Subject Properties" are to be removed from the Palo Pinto rolls and placed in a DHEI account, which did not exist and was created as a result of the agreed judgment:

Pursuant to [S]ections 23.1241[ and 23.1242] of the Texas Tax Code, the [c]ourt finds the *Subject Properties* were entitled to be apprais[ed] as [DHEI] in Palo Pinto County, Texas, for tax years 2013, 2014, 2015, 2016, and 2017.

Accordingly, the *Subject Properties' market value* for 2013, 2014, 2015, 2016, and 2017, if any, *shall be removed* from the Palo Pinto appraisal rolls. Additionally, Palo Pinto Appraisal District *shall create a* [*DHEI*] *account for the Subject Properties* at the following values:

| Tax Year | Taxable Value |
|----------|---------------|
| 2013 | $466,041.80 |
| 2014 | $466,041.80 |
| 2015 | $396,535.00 |
| 2016 | $349,424.18 |
| 2017 | $297,131.07 |

---

[16]Eighty-nine of the numbers begin with N0005, but the first item on the list is "Unit#3958 – 68 HP w/ Ariel, 1995 WAUK VRG-330."

[Emphases added.][17]

J-W, itself, characterized the judgment as creating a forward-looking DHEI account in its summary-judgment motion as follows:

> J-W Power entered an Agreed Final Judgment with Palo Pinto County that was signed by the [c]ourt on July 22, 2019, which resolved the unlawful appraisal of J-W Power's DHEI property as business personal property under Section 23.01 of the Tax Code by Palo Pinto County for tax years 2013–2016. As part of the settlement, Palo Pinto County Appraisal District *created* a DHEI account for the value that should have been appraised on J-W Power's inventory for tax years 2013–2016 and reconciled the tax refunds due with the amount of taxes due, which J-W Power has paid. . . . The Jack County compressors at issue in this suit are part of the same Palo Pinto County DHEI. [Emphasis added.]

Thus, the judgment shows and J-W's characterization of the judgment demonstrates that no compressor was subject to DHEI valuation before the judgment was signed, and it itemizes far fewer than the more than 300 compressors that J-W claims were maintained at the Palo Pinto yard and that were allegedly subjected to DHEI treatment.[18]

---

[17]The values placed on Palo Pinto's rolls for the DHEI account mostly match those established in the Agreed Judgment: $319,109.74 for 2013 (a lower value than the judgment); $466,042 for 2014; $396,535 for 2015; and $349,424.76 for 2016.

[18]Through a bit of misdirection, J-W argues that Jack is attempting to look improperly behind Palo Pinto's appraisal rolls to challenge the composition of Palo Pinto's appraisal rolls. Specifically, J-W titles its argument as "Section 25.25 does not provide for a reevaluation of a property's value in another county." The argument turns on (1) the fact that the agreed judgment assigned the DHEI specific values for the 2013–2016 tax years and (2) the claim that Jack has no power to look at what property composed the value of the accounts. But it is the judgment itself and not Jack's alleged attempt to audit the composition of the rolls that shows what property composed the account created by the judgment. J-W ignores (1) the provisions of the judgment that specifically list individual compressors as "the Subject Properties" and (2) that the judgment stated that Palo Pinto "shall create a Dealer's Heavy Equipment Inventory account *for the Subject Properties* at the following values" and then lists the

- Jack filed a summary-judgment reply noting, as we just have, that the "Agreed Final Judgment with Palo Pinto CAD specifically lists the compressors that comprise that DHEI account." Comparing the account numbers listed in the judgment to the units listed on Jack's rolls, the reply included an exhibit that compared "the Subject Properties" itemizing the compressors placed in the Palo Pinto DHEI account created by the agreed judgment to the compressors listed on the 2013–2016 Jack appraisal rolls. We attach that exhibit as Appendix A to this opinion. Jack's reply stated that of the eighty-six compressors at issue in this suit, only fourteen were included as subject properties listed in the agreed judgment, leaving seventy-two compressors on Jack's appraisal rolls that were not listed as subject to the judgment. The reply also offers a concession: "[Jack's] Motion for Summary Judgment should, at the very least, be granted as to those 72 compressors."[19]

---

values of the accounts created for the Subject Properties. [Emphasis added.] In essence, the judgment's terms demonstrate that only certain compressors were appraised as DHEI. A different judgment with different terms might produce a different result, but we deal with the terms of the judgment before us.

[19]The agreed judgment also presents a procedural conundrum. It was signed after the Jack County ARB had ruled on J-W's motion to correct. Indeed, it was not signed until after J-W filed its petition for review. The scope of review by the district court is specified in the Tax Code as follows, "Review is by trial de novo. The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." Tex. Tax Code Ann. § 42.23(a). The Texas Supreme Court has described this scope of review broadly as follows:

A trial de novo is "[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance." *Trial de novo*, Black's Law Dictionary (10th ed. 2014); *see also PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 476 (Tex. 2008). Such a trial is "appellate" only as distinguished from "original" or "concurrent[]" but not in the sense that the evidence is fixed or that [the] court is confined to that paper record. *Id.* A trial de novo is not confined to the same evidence that was presented during the administrative phase, and "the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision." *Id.*

At bottom, J-W argues in essence that the more than 300 compressors that it claimed were part of the inventory in its Palo Pinto yard should have been subject to DHEI valuation. But when it consigned itself to the limited remedy of Section 25.25(c)(2), J-W was required to show more than a possibility of erroneous tax treatment; it had to show that the property was subject to multiple appraisals, and without that showing, it failed to demonstrate that it had suffered the effects of double taxation. As outlined above, the evidence that J-W relied on showed that initially both Palo Pinto and Jack each valued the compressors as individual units, and J-W did not claim below and does not claim on appeal that an overlap between those individual valuations constitutes multiple appraisals.[20] Thus, Palo Pinto appraised no compressor under the DHEI valuation scheme before the agreed judgment "created" a DHEI account on Palo Pinto's rolls. And that judgment did not make a blanket pronouncement that any compressors maintained at J-W's Palo Pinto yard were

> Thus, in a trial de novo, a court may consider arguments and evidence that are introduced afresh.

*Willacy Cnty. Appraisal Dist.*, 555 S.W.3d at 50. But as the supreme court has also noted, that scope of review may be limited by the grounds of a protest: "Under the statute in this case, the trial court's consideration of the appraisal district's claim is confined to a de novo determination of the taxpayer's protest. The District has no mandate to expand trial court review of an appraisal beyond the taxpayer's protest." *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist. by & through Crigler*, 694 S.W.3d 752, 761 (Tex. 2024) (citation omitted). Thus, the question is whether a judgment not in existence when the administrative body made its decision may later be used to attack that decision because of the wide scope of review. Because of our resolution, we do not reach this question.

[20]J-W's counsel confirmed this point in oral argument.

subject to DHEI valuation treatment. The judgment itemized only a fraction of the compressors that J-W claimed were part of its Palo Pinto inventory. J-W counters that the DHEI statutes do not require a listing of the individual properties in its inventory. As discussed below, the San Antonio Court of Appeals disagrees. *See Duval Cnty. Appraisal Dist.*, 2022 WL 789345, at *5–8. And we do not answer that question because we do not face it. The agreed judgment specified "the Subject Properties" that should receive DHEI valuation, and J-W does not explain why it should not be bound by the terms of the agreed judgment to which it was a party. Again, a different treatment of DHEI might produce a different result.

On the shifting sands of Palo Pinto's tax treatment of J-W, we are left to try and find a foundation on which to build our holding. J-W's brief makes no effort to catalog whether any of the compressors itemized in the agreed judgment were also appraised by Jack. But in the trial court, Jack did compare the number of compressors on its rolls with those listed in the judgment. Of the eighty-six compressors it claimed were at issue, only fourteen were listed in the agreed judgment's ninety that had appeared in Jack's rolls for the 2013–2016 tax years. Jack advised the trial court that its motion for summary judgment should be granted "at the very least" for the seventy-two compressors on its rolls but that were not referenced as "the Subject Properties" in the agreed judgment. We will adopt that suggestion. We hold that, at most, the fourteen compressors that overlap on the list

39

of "the Subject Properties" in the agreed judgment and on Jack's appraisal rolls are subject to correction on the basis of multiple appraisals.

### 3. The San Antonio Court of Appeals's holdings in *Duval* supports our holding.

As we noted, another court of appeals has rejected J-W's multiple-appraisals claim. *See id.* The reasoning of *Duval* differs from some of our initial reasons to reject the multiple-appraisal claims and turns on the fact that "[t]he appraisal accounts conclusively negate J-W Power's claim that it reported [the compressors appraised as separate pieces of personal property] to the [appraisal district of the county that J-W claimed was the situs of DHEI]." *Id.* at *6. We rely on *Duval* to a limited extent to support our rationale set out in the preceding section.

*Duval*'s discussion begins with principles that we have already cited—that there is a default rule that personal property is taxed in the taxing unit where it is located on January 1 for more than a temporary period of time. *Id.* at *4 (citing Tex. Tax Code Ann. § 21.02). In turn, the DHEI statutes—Sections 23.1241 and 23.1242 of the Tax Code—create a different taxable situs for DHEI. *Id.* (citing *EXLP Leasing*, 554 S.W.3d at 582–83). *Duval* read the supreme court's opinion in *EXLP Leasing* as validating the DHEI valuation scheme but also as holding that the DHEI statutes create preconditions that must be met before DHEI valuation obtains:

> This [DHEI] statutory framework "plainly calls for prepayments based on the monthly revenue generated by a dealer's *entire* inventory, regardless of the physical location of individual units." [*EXLP Leasing*, 554 S.W.3d] at 584. "It necessarily follows that those prepayments—and

the dealer's ultimate tax liability—can be made and incurred in only one county." *Id.* "Otherwise, dealers would face double or greater taxation when paying taxes on an entire inventory in every county where a unit of property is located. And application of the default situs provision would lead to exactly that result." *Id.*

*Id.*

As here, *Duval* noted that J-W's argument is that it suffered multiple appraisals because compressors appraised separately were also appraised as DHEI in another county. *Id.* To sustain its argument in *Duval*, J-W—again as here—relied on affidavit testimony from its vice-president, Kavin Tubbs. *Id.* The portions of Mr. Tubbs's affidavit quoted in *Duval* are identical to statements in the affidavit that he filed below in this matter; they are as follows:

- "J-W Power maintained its compressor inventory of compressors physically located in Duval County at J-W Power's business location and storage yard in Jim Wells County [here Palo Pinto] ('Yard County')";

- "J-W Power assigned and self-reported its dealers' heavy equipment inventory maintained in the Yard County to the Yard County pursuant to [S]ection 23.1241 of the Texas Tax Code, by filing the required declarations in the Yard County"; and

- "J-W Power tendered payment for the inventory taxes on its inventory pursuant to [S]ection 23.1242 of the Texas Tax Code."

*Id.*

But both in our record and in the one in *Duval*, "Tubbs acknowledged [in a deposition] that at the time he filed this and previous similar affidavits, the company had misunderstood the applicable statute: J-W Power had only reported compressors

41

in the initial month of their lease instead of every month of their lease." *Id.* Because of this error, *Duval* noted that only a small number of the compressors that it had claimed were maintained in the county where it maintained its yard were actually reported to the yard county for the 2013–2016 tax years for which it claimed that there were multiple appraisals. The same holds true here to a greater extent than it did in *Duval.* Here, J-W claimed that its DHEI inventory in Palo Pinto included more than 300 units in each of the 2013–2016 tax years. Jack's brief states that J-W reported zero compressors in its 2012 filings that govern the 2013 tax year, five in its 2013 filings that govern the 2014 tax year, twenty-six in its 2014 filings that govern the 2015 tax year, and twenty-eight in its 2015 filings that govern the 2016 tax year.

Our case is unlike *Duval* because none of the compressors that J-W reported in its DHEI filings in the yard county were also appraised by the county that individually appraised the compressors. *Id.* Here, there is some overlap, but we address any overlap in our holding, which removes from Jack's appraisal rolls the compressors that were listed in the agreed judgment and also appear on Jack's appraisal rolls.

*Duval* explained why it concluded that J-W's flawed efforts to invoke the DHEI valuation scheme in its DHEI filings invalidated its efforts to claim that compressors maintained in that yard were also appraised as compressors not referenced in the filings:

> J-W Power argues that the fact that it did not report the compressors taxed in Duval County to Jim Wells County is irrelevant because they are nevertheless part of an inventory maintained in Jim Wells County and

appraised by the Jim Wells County Appraisal District. J-W Power relies on language in *EXLP Leasing* emphasizing that "[S]ection 23.1241 includes no process for tracking individual units or documenting the revenue they produce while located in any given county on any particular date." [554 S.W.3d] at 583. Because those requirements are contained in [S]ection 23.1242, J-W Power's reliance on this isolated quotation is misplaced. Under the plain language of the statute, as recognized by the Texas Supreme Court in *EXLP Leasing*,

- "[T]he dealer must file with 'the collector' monthly heavy-equipment inventory tax statements indicating the 'unit property tax' of *all items* sold or *leased* the preceding month and, 'together with the statement,' must 'deposit with the collector an amount equal to the total of unit property tax assigned to *all items* of heavy equipment sold, *leased*, or rented from the [DHEI] in the preceding month to which a unit property tax was assigned.' [Tex. Tax Code Ann.] § 23.1242(b)."

- "Those funds are held in escrow [for the owner]. [*Id.*] § 23.1242(c). At the end of the year, after tax rates are finalized, the taxing unit prepares the annual tax bill, toward which prepayments held in escrow are applied. *See* [*id.*] § 23.1242(h)."

- "This tax-prepayment system centers on the 'unit property tax,' which is calculated by multiplying the payments received *for each unit* by the 'unit property tax factor,' calculated as the 'tax rate at the *location where a dealer's heavy equipment inventory* is located on January 1'—not the different tax rates at the various locations where each individual unit of the dealer's inventory is located on January 1. [*Id.*] § 23.1242(a)(4)."

*Id.* at 584 (some emphas[e]s added). And these monthly heavy equipment inventory tax statements must include "a description of each item of heavy equipment sold, leased, or rented including any unique identification or serial number affixed to the item by the manufacturer[.]" Tex. Tax Code Ann. § 23.1242(e)(1). So[] while the prepayments are based on the monthly revenue generated by a dealer's entire inventory, regardless of the physical location of individual units,

43

the individual units must nevertheless be accounted for, wherever they may be. *See id.*; Tex. Tax Code Ann. § 23.1241(a)(2).

*Id.* at *5.

*Duval* specifically rejected the possibility of multiple appraisals because none of the compressors taxed individually in another county were reported as DHEI in J-W's filings in the yard county. The basic principle that *Duval* stated is one applicable to J W's argument here:

> J-W Power's position is that because it reported some of its compressors to the Jim Wells County Appraisal District for tax years 2013–2016, all the compressors nominally leased out of the Jim Wells Yard during the same time frame were, in fact, appraised by the Jim Wells County Appraisal District. But for the Duval County compressors to be appraised as [DHEI] by Jim Wells County Appraisal District, they must first have been reported to that appraisal district in a statement by a property owner under [S]ection 23.1242. *See* Tex. Tax Code [Ann.] § 23.1242(e)(1).

*Id.* In essence, *Duval* holds that there must be some mechanism to know what compressors compose the DHEI account. *See id.* Here, that mechanism is the list of "the Subject Properties" in the agreed judgment.

In our appeal, J-W challenges *Duval*'s reasoning by claiming that it created "extratextual" requirements "not found in [S]ections 23.1241[ and 23.1242] of the Texas Tax Code, and in contradiction of Texas Supreme Court's mandate in *EXLP* [*Leasing*]." It provides no guidance where to find these supposedly extratextual requirements, and it offers no arguments explaining why the requirements that *Duval* gleaned from the DHEI statutes and *EXLP Leasing* were incorrect. The meat of

J-W's argument appears in the section of its brief where it contends that Jack has no power to police the appraisal decisions of Palo Pinto.[21] As an initial matter, we see Jack's argument not as an attempt to police Palo Pinto County but as citing *Duval* for the proposition that J-W failed in its efforts to trigger appraisal under the DHEI valuation scheme in Palo Pinto. J-W's specific argument is that Section 23.1241(f) does not require a listing of units. That section deals with a declaration that a DHEI dealer must file.[22] J-W's argument seems to be that because one specific DHEI document does not require the listing of individual units, *Duval* must have been

---

[21]This appears to be an argument under J-W's fourth issue.

[22]Section 23.1241(f) provides,

The comptroller by rule shall adopt a [DHEI] declaration form. Except as provided by Section 23.1242(k), not later than February 1 of each year, or, in the case of a dealer who was not in business on January 1, not later than 30 days after commencement of business, each dealer shall file a declaration with the chief appraiser and file a copy with the collector. The declaration is sufficient to comply with this subsection if it sets forth:

(1) the name and business address of each location at which the declarant conducts business;

(2) a statement that the declarant is the owner of a dealer's heavy equipment inventory; and

(3) the market value of the declarant's heavy equipment inventory for the current tax year as computed under Subsection (b).

Tex. Tax Code Ann. § 23.1241(f).

wrong. J-W provides no analysis regarding how *Duval* miscited or misinterpreted Section 23.1242 that it relied on for its holding.

J-W's remaining—undeveloped—argument is that the county where DHEI status is maintained may audit and impose penalties for reporting failures[23] and goes on to contend that "[t]o the extent J-W Power underreported or underpaid on DHEI in Palo Pinto County, [S]ection 23.1242 provides Palo Pinto County—not Jack CAD—appropriate remedies to correct such omissions, including significant penalties." *See* Tex. Tax Code Ann. § 23.1242(m) (providing that "a dealer who fails to file or fails to timely file a statement as required by this section shall forfeit a penalty" in the amount of "$500 for each month or part of a month in which a statement is not filed or timely filed after it is due"). Again, this argument leaves unchallenged *Duval*'s analysis.

Our disposition makes it unnecessary to address the gamut of J-W's challenges to *Duval.* We apply *Duval* for the not unremarkable proposition that to know what property is subject to appraisal under the DHEI scheme there should at least be some mechanism to know what property was valued by an appraisal district as part of the DHEI. Here, the agreed judgment between J-W and Palo Pinto answered that question—it was the property listed as "the Subject Properties" in the judgment and not some unenumerated items of inventory that J-W internally listed as inventory. Our holding turns on that principle.

---

[23]Citing Tex. Tax Code Ann. §§ 23.1241(g), 23.1242(m)–(n).

We overrule J-W's first and fourth issues.  We sustain J-W's third issue only as to the fourteen overlapping compressors and overrule the remainder of that issue.

**D.  We reject J-W's contention that the trial court erred by holding that J-W was not entitled to correct Jack's appraisal rolls under Tax Code Section 25.25(c)(3) because the compressors listed did not exist in a location in Jack County.**

As part of its second issue, J-W argues that the compressors listed on Jack's rolls did not exist at a "location" described in Jack's rolls.  The basis of J-W's argument is that the words in Section 25.25(c)(3) authorizing a correction in the appraisal roll for "the inclusion of property that does not exist . . . at the location described in the appraisal roll" embrace a mis-location of a property's taxable situs in the appraisal roll.  In other words, even if the property physically exists in the county where the roll describes it to be, a motion to correct may be utilized to remove the property from the roll if its tax situs is in another county.  J-W's specific argument is as follows:

> [A]fter the Texas Supreme Court's decision in *EXLP* [*Leasing*], Jack CAD cannot continue to ignore the Texas Supreme Court's caution that the "framework for valuation of dealer-held heavy equipment" established in [S]ections 23.1241[ and 23.1242] "ignores the physical location of any particular unit of inventory on any particular date." *EXLP* [*Leasing*], 554 S.W.3d at 583.  And because [S]ection 23.1241 looks only "to *inventory-wide* revenue," in that it provides that "the value of [DHEI] is determined by the annual income generated by the *inventory as a whole*, rather than the income from *each individual unit* of equipment," so long as the [DHEI] is maintained in a county outside of Jack County, all individual units comprising the [DHEI] are

47

<u>sited</u> outside of Jack County as well. *Ibid.* (citing Tex. Tax Code [Ann.] § 23.1241(b) (emphasis added)).[24] [Underlined emphasis added.]

This argument turns on the false premise that because DHEI now has a specified taxable situs, Section 25.25(c)(3)'s ability to remove mislocated property from the rolls allow for the removal of mis-sited property. But the argument is an attempt to mix concepts; ignores the plain, specific language of Section 25.25(c)(3) using the word "location"; and also ignores the body of precedent defining the term "location" as referencing a physical location.

    **1.**    **The term "location" as used in Tax Code Section 25.25(c)(3) means physical location, not tax situs.**

Simply, "[t]ax situs law is that body of law that determines where property is located *for property tax purposes.*" 21 Jay D. Howell Jr., *Texas Practice: Property Taxes* § 311 (4th ed. May 2024 update) (emphasis added). *Duval* cited the Texas Supreme Court for the proposition that "'[s]itus' is the place 'where personal property shall be regarded as being situated for the purpose of taxation.'" 2022 WL 789345, at *3 n.3. (citing *City of Dallas v. Tex. Prudential Ins. Co.*, 291 S.W.2d 693, 695 (Tex. 1956)). The most relevant example of situs is the very argument that J-W makes—tax situs for

---

[24]Elsewhere in its brief, J-W makes a similar argument that tax situs controls the outcome because "the Texas Supreme Court flatly rejected this argument in *EXLP* [*Leasing*], ruling '[w]e hold [that] [*S*]*ection 21.02 does not control the taxable situs of property covered by* [*S*]*ection 23.1242* such as the [DHEI] here. *EXLP* [*Leasing*], 554 S.W.3d at 585." Again, J-W's argument is that tax situs must drive our analysis to the point that we must ignore the language of Section 25.25(c)(3)—an argument we reject.

DHEI is other than where it is physically located but in the county where a DHEI dealer maintains its yard.

But Section 25.25(c)(3) does not use language that permits a correction of some inchoate concept of situs; it refers to property that "does not exist . . . at [a] *location described in the appraisal roll*." Tex. Tax Code Ann. § 25.25(c)(3) (emphasis added). Case law easily applies standards of statutory interpretation to interpret the word "location" in Section 25.25(c)(3) to refer to where property has corporeal, physical existence:

> The primary rule of statutory interpretation is that we must ascertain and give effect to the intent of the [Texas] Legislature. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000). In interpreting the statute, we must consider the plain language of the statute and may consider the legislative history and the consequences from alternative constructions. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000); *see also* Tex. Gov't Code Ann. § 311.023 . . . .
>
> We begin with the plain language of the statute. The plain meaning of "property that does not exist at the location described in the appraisal roll" obviously refers to the actual, physical presence of property at the place described in the appraisal roll. Defining the term "location" as meaning actual, physical location restricts [S]ection 25.25(c)(3) to those cases in which property did not physically exist at the appraisal roll location at any time during the taxable year. Thus, if there is some existence at the location, [S]ection 25.25(c)(3) does not allow a change in the appraisal roll. To hold otherwise would not give effect to the words "does not exist" in [S]ection 25.25(c)(3).

*Harris Cnty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 97 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (en banc); *see also Duval Cnty. Appraisal Dist.*, 2022 WL 789345, at *3 n.3 (cataloging the cases mirroring *Harris County*'s holding). The Fourteenth Court of Appeals relied on *Harris County* to specifically

49

reject the argument that the word "location" in Section 25.25(c)(3) meant a property's taxable situs. *See SPX Corp. v. Altinger*, 614 S.W.3d 362, 375 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Interpreting the word "location" not to mean tax situs hardly deprives a diligent taxpayer of a remedy to address situs. Indeed, the legislature included within the grounds for a taxpayer's Section 41.41 protest the "inclusion of the owner's property on the appraisal records" and "identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll." Tex. Tax Code Ann. § 41.41(a)(3), (6). One ground for a protest is a "Protest of Situs" that allows "[a] protest against the inclusion of property on the appraisal records for an appraisal district on the ground that the property does not have taxable situs in that district" and provides that the protest "shall be determined in favor of the protesting party if he establishes that the property is subject to appraisal by another district or that the property is not taxable in this state." *Id.* § 41.42. Thus, the Tax Code specifically uses the word "situs" in the context of a Chapter 41 protest but does not carry the use of that word forward into Section 25.25(c)(3). We assume that the legislature's word choice is purposeful. *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 727 (Tex. 2024) ("[W]e generally presume the [Texas] Legislature uses the same word consistently throughout a statute and uses different words to convey different meanings.").

And as *Duval* noted, though DHEI has special rules to determine market value and taxable situs, the components of the DHEI remain personal property with a physical existence; thus, it is not a contradiction to have rules that address a property's incorporeal tax situs and its physical existence at a location. 2022 WL 789345, at *7.

Further, we have already noted that *Duval* cites to a 1956 case for the definition of "situs," making clear that the concept is one of long standing. *Id.* at *3 n.3. But the legislature did not choose to include that word in Section 25.25(c)(3). That decision is one of consequence in statutory interpretation because "[w]e presume the [Texas] Legislature 'chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.'" *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017).

And giving it much shorter shrift than we have, the Austin Court of Appeals disposed of the argument that J-W makes here—that its compressors did not exist where they were physically located—by concluding that

> [its prior holding interpreting Section 25.25(c)] foreclose[d] J-W Power's "form or location" ground. J-W Power is not arguing that the compressors "did not exist" in Sterling County [or Irion County]; it is arguing only that Sterling County authorities [and Irion County authorities] had no right to appraise the compressors even though they were there. But the compressors on the Sterling County appraisal rolls existed in Sterling County[, and the compressors on the Irion County appraisal rolls existed in Irion County]. Thus, J-W Power's argument is like the property owner's in *Kellair Aviation*[ *Co. v. Travis Cent. Appraisal Dist.*, 99 S.W.3d 704, 707–08 (Tex. App.—Austin 2003, pet. denied)]— the owner there said, and J-W Power here says, that some portion of the

51

subject property did not "exist" in the subject county because that county's authorities had no right to tax that proportionate value, whether by allocation in *Kellair Aviation* or by special DHEI computation here. But because the subject property did in fact exist in the subject county, Section 25.25(c)(3) is not an appropriate remedy.

*See Sterling Cnty. III*, 2024 WL 4982490, at *6; *Irion Cnty. III*, 2024 WL 4982488, at *6.

### 2. The summary-judgment evidence establishes that the compressors listed on Jack's appraisal rolls were located in Jack County.

Having decided that Section 25.25(c)(3) refers to physical location, the question becomes whether Jack's summary-judgment proof established that the compressors that it carried on its rolls existed at a location in Jack County. Jack relies on the provisions of the "Agreed Order Resolving Defendant's Motion to Compel Responses to Discovery" for its proof that the compressors existed at a location in Jack County. The first paragraph of that order provides that

> [J-W's] objections to [Jack's] Interrogatory No. 1 are withdrawn[,] and [J-W] agrees [that] it must identify the county in which each compressor that is the subject of this lawsuit was physically located on January 1 of each tax year at issue. [J-W] amends its response to state[,] *"Each compressor package identified in the tax bills from Jack County was, as of January 1 of each year in which that compressor package was on the appraisal roll of Jack CAD, physically located in Jack County and had been so located for more than a temporary period of time."* [J-W] will supplement its response to Request for Production No. 1 to identify the make, model, manufacturer, serial number, and weight of each compressor [that] is included in the subject property. Such response is deemed sufficient. [Emphasis added.]

The order is dated, is signed by the trial court, and has the notation "agreed" with the signature of J-W's counsel. J-W's only challenge to the probative value of the order is that "[t]his testimony might be relevant to Jack CAD's argument if the [DHEI] was

52

business personal property as Jack CAD insists," but J-W contends that it is not relevant because the compressors were DHEI. It is relevant—and is determinative—of the question of where the compressors on Jack's rolls were located. The interrogatory answer demonstrates that the compressors appraised by Jack "existed in the form and location described on Jack['s] appraisal roll"[25] and thus were not subject to correction under Section 25.25(c)(3).

We overrule the portion of J-W's second issue directed at the question of location.

### E. We reject J-W's contention that the trial court erred by holding that J-W was not entitled to correct Jack's appraisal rolls under Tax Code Section 25.25(c)(3) because the compressors listed did not exist in a "form" in Jack County.

As part of its second issue, J-W argues that the compressors listed on Jack's appraisal rolls did "not exist in the form . . . described in the appraisal roll." Though it acknowledges the long-standing interpretation of what the word "form" in Section 25.25(c)(3) means in relation to whether the rolls correctly describe the property in accordance with the definition in the Tax Code, J-W argues that the interpretation is too cabined to accomplish the word's true purpose:

> An interpretation of the statute by the [c]ourt[,] which reads "form" as narrowly as Jack CAD argues, would strip any meaning from the word and contravene the purpose of the code and the [c]ourt's duty to give every word of a statute meaning. *EXLP* [*Leasing*], 554 S.W.3d at 581. *If "form" only means a distinction between "real" and "personal" property, without*

---

[25]We quote J-W's brief though similar quotes appear in the record.

*regard to the appraisal and tax implications applied to specific types of property, such as DHEI, then "form" is superfluous in the code. Because real property and conventional business personal property are appraised and taxed the same—at full market value—no fundamental unfairness could arise merely by the mischaracterization between those two options.* Only if, as here, a form of property [that] is appraised and taxed differently from real and conventional personal property exists, does "form" take on any meaning which furthers the purpose of the statute. [Emphasis added.]

In essence, J-W's argument is that the word "form" should be given a broad meaning that embraces the type of challenge that J-W makes, i.e., the compressors (1) should be valued not under default personal property appraisal rules but under the DHEI valuation scheme and (2) are subject to a tax situs outside Jack. We disagree. Prior case law uniformly interprets the word "form" to mean a property's identification as a type of property listed in the Tax Code and recognizes that to read the word "form" as expansively as J-W advocates would read out limitations in the provisions of Section 25.25 and the overall remedy scheme of the Tax Code.

> **1. We explain why we interpret the word "form" to mean its identification as a type of property listed under Section 25.02(a) of the Tax Code.**

Almost thirty years ago, the Dallas Court of Appeals addressed why the word "form" should not have the expansive definition advocated for by J-W:

Having determined the meaning of "appraisal roll," we must now determine what constitutes a "form" of property "described in the appraisal roll." Appellants assert that "form" of property constitutes more than the appraised value of the property. Besides [S]ubsection (c), we note that [S]ubsection (d) also provides for appraisal roll corrections affecting tax liability. Subsection (d) permits the property owner to file a motion with the appraisal review board "to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the

54

owner's property." Tex. Tax Code Ann. § 25.25(d) . . . . That provision, however, provides that the motion to change the appraisal roll must be filed before the taxes become delinquent, the appraised value must exceed by more than one-third the correct appraised value, and the landowner must pay a "late-correction penalty." *See* Tex. Tax Code Ann. § 25.25(d) . . . .

If "form" in [S]ubsection (c)(3) included "appraised value," the strict filing deadlines and penalty provisions of [S]ubsection (d) would be subsumed by [S]ubsection (c)(3)'s five-year filing deadline with no late-correction penalty. *Compare* Tex. Tax Code Ann. § 25.25(c)(3) . . . [,] *with* Tex. Tax Code Ann. § 25.25(d) . . . . Because statutes must be construed in a manner giving effect to the entire statute, we read "form" as meaning more than appraised value. *See* Tex. Gov't Code Ann. § 311.021(2) . . . ; *G.N.B., Inc. v. Collin* [*Cnty.*] *Appraisal Dist.*, 862 S.W.2d 52, 56 (Tex. App.—Dallas 1993), *rev'd on other grounds*, 874 S.W.2d 659 (Tex. 1994); *Indus*[.] *Accident Bd. v. Martinez*, 836 S.W.2d 330, 333 (Tex. App.—Houston [14th Dist.] 1992, no writ).

Reading [S]ections 25.02(a), 25.03, 25.24, 25.25(c)(3), and 25.25(d) together, we construe "form" of the property to mean its identification as a type of property listed under [S]ection 25.02(a), such as real property, personal property, an improvement to real property, or some other physical description of the property on the appraisal roll, other than its appraised value or its use. *See* Tex. Tax Code Ann. §§ 25.02(a), 25.24, 25.25(c)(3), 25.25(d) . . . ; *Collin* [*Cnty.*] *Appraisal Dist. v.* [*Ne.*] *Dall*[.] *Assocs.*, 855 S.W.2d 843, 849 (Tex. App.—Dallas 1993, no writ) (form includes physical descriptions of the property's form, including its boundaries, shape, or configuration[] but does not include descriptions of the property's use).

*Dall. Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318, 321 (Tex. App.—

Dallas 1995, writ denied).

Case law after *G.T.E. Directories* has adopted its holdings (1) that a challenge to

the form of the property listed on the appraisal roll cannot be used as a coy challenge

to the property's valuation and (2) that the term "form" limits the inquiry to whether

55

the description on the appraisal roll is correct and is in accord with the Tax Code's definitions. For example, the First Court of Appeals provided a detailed analysis of Section 25.25(c) and its limited uses in *Bauer-Pileco, Inc. v. Harris Cnty. Appraisal Dist.*, 443 S.W.3d 304 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (op. on reh'g). *Bauer-Pileco* noted that the Tax Code provides remedies for taxpayers to challenge an improper valuation, such as those we have already described in Section 41.41 and in Section 25.25(d). *Id.* at 310. *Bauer-Pileco* went on to note that a Section 25.25(c) challenge was in essence a matter of last resort that "include[d] only objective and ministerial matters such as clerical errors" and "d[id] not include the substantive reevaluation of a property's market value." *Id.* at 311 (citing *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex. App.—Dallas 2000, pet. denied)).

*Bauer-Pileco* cited a 1999 case from the Dallas Court of Appeals that relied on *G.T.E. Directories* and held that "in the context of a [S]ection 25.25(c)(3) motion, ["form" is defined] to mean 'its identification as a type of property listed under [S]ection 25.02(a), such as real property, personal property, an improvement to real property, or some other physical description of the property on the appraisal roll, other than its appraised value or its use.'" *Id.* (first quoting *Titanium Metals Corp. v. Dall. Cnty. Appraisal Dist.*, 3 S.W.3d 63, 66 (Tex. App.—Dallas 1999, no pet.), and then quoting *G.T.E. Directories Corp.*, 905 S.W.2d at 321). *Bauer-Pileco* explained that *Titanium Metals* "clarified that 'correction of the appraisal roll is only allowed when the appraisal roll erroneously reflects that a particular form of property exists at a

specified location and, in fact, no such property exists at that location.'" *Id.* (quoting *Titanium Metals*, 3 S.W3d at 66).[26]

Finally, *Bauer-Pileco* reiterated the rationale from *Titanium Metals* that a party seeking a correction should not be able to look "'behind the appraisal roll' to determine what *types* of personal property are included in the appraisal roll's description." *Id.* at 312 (quoting *Titanium Metals*, 3 S.W.3d at 67). Though the appellant in *Bauer-Pileco* claimed that it had made an error in its rendition statement, *Bauer-Pileco* noted that the appellant's objection was not to an inaccuracy in the appraisal roll but was directed to the value of what was on the roll:

> We agree with the court of appeals'[s] statement in *Titanium Metals* that "[t]his, in our view, is a complaint about the *value* of the property described in the appraisal roll, not the existence or nonexistence of certain 'forms' of property at the particular location described." [*Titanium Metals*, 3 S.W.3d at 66] (emphasis in original). In other words, [appellant] asks to correct an error in its *rendition statement*—not in the appraisal roll—that resulted in an incorrect appraised value for its property.

*Id.* at 312–13.

In another case, the Dallas court summarized its holding in *Titanium Metals* to parallel that opinion's treatment in *Bauer-Pileco*:

---

[26]*Bauer-Pileco* listed the following cases as being in accord with *Titanium Metals*: *Harris Cnty. Appraisal Dist. v. Tex. E. Transmission Corp.*, 99 S.W.3d 849, 852 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Titanium Metals* with approval); *Kellair Aviation*, 99 S.W.3d at 707 (same); *Curtis C. Gunn, Inc. v. Bexar Cnty. Appraisal Dist.*, 71 S.W.3d 425, 428 (Tex. App.—San Antonio 2002, pet. denied) (same). 443 S.W.3d at 311.

[T]his [c]ourt has defined the term "form" in the context of [Section] 25.25(c)(3) to mean "its identification as a type of property listed under [S]ection 25.02(a), such as real property, personal property, an improvement to real property, or some other physical description of the property on the appraisal roll, other than its appraised value or its use." [*Titanium Metals*, 3 S.W.3d at 66] (quoting . . . *G.T.E. Directories Corp.*, 905 S.W.2d [at] 321 . . . . Thus, the relief available under [S]ection 25.25(c)(3) applies only when no property exists in the form or at the location described in the appraisal roll. *Id.* Stated differently, correction of the appraisal roll is only allowed when the appraisal roll erroneously reflects that a particular form of property exists at a specified location and, in fact, no such property exists at that location. *Id.*

*Dish Networks Corp. v. Collin Cent. Appraisal Dist.*, No. 05-15-00800-CV, 2017 WL 1536511, at *3 (Tex. App.—Dallas Apr. 27, 2017, pet. denied) (mem. op.).

Further, the First Court of Appeals relied on the limited meaning of the word "form" (and "location") to hold that Section 25.25(c)(3) is not a vehicle to remove property from the appraisal roll based on a claim of improper tax treatment, such as for the reason that the property is exempt from taxation because it was used in interstate commerce:

In making these arguments, [appellee] misconstrues the words "form" and "location." As used in [S]ection 25.25(c)(3), the reference to a property's "form" means its identification as a type of property such as real property, personal property, an improvement to real property, or some other physical description of the property on the appraisal roll. . . . *G.T.E. Directories Corp.*, 905 S.W.2d [at] 321 . . . . "Location" means the property's physical location. *Aramco Associated Co. v. Harris Cnty. Appraisal Dist.*, 33 S.W.3d 361, 365 (Tex. App.—Texarkana 2000, pet. denied) (cited with approval in . . . *Tex. E. Transmission Corp.*, 99 S.W.3d [at] 851–52 . . . ). An argument that certain property is exempt from taxation does not implicate either the property's form or its location. Section 25.25(c)(3) therefore is not the appropriate vehicle for seeking the requested relief. [Appellee] accordingly did not exhaust its

58

administrative remedies by seeking a remedy under this inapplicable provision.

*Harris Cnty. Appraisal Dist. v. ETC Mktg., Ltd.*, 399 S.W.3d 364, 370 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). This holding reinforces the conclusion that the choice of the word "form" in Section 25.25(c)(3) circumscribes a motion to correct to more limited circumstances than the allegedly improper tax treatment of the property on the appraisal roll.

And J-W makes the same argument on appeal that it made in *Duval*, and *Duval* rejected the argument citing *Titanium Metals* (among other authorities) to hold that "[t]he term 'form' means 'a physical description of the property other than its appraised value or its use, such as real property, personal property, or an improvement to real property.'" 2022 WL 789345, at \*6 (quoting *Curtis C. Gunn*, 71 S.W.3d at 428, and citing *Titanium Metals*, 3 S.W.3d at 66). Relying on *Bauer-Pileco*, which we have also extensively discussed, *Duval* held that

> [t]he compressors exist in the form and location described in the Duval County appraisal roll. For that reason, a [S]ection 25.25(c)(3) correction does not lie. Accordingly, the trial court did not err by concluding the Appraisal District was entitled to judgment as a matter of law on J-W Power's "form or location" claim. *See* Tex. R. Civ. P. 166a(c); Tex. Tax Code [Ann.] § 25.25(c)(3); *Bauer-Pileco* . . . , 443 S.W.3d [at] 314 . . . .

*Id.* at \*7.

59

**2. The summary-judgment evidence establishes that the compressors listed on Jack's appraisal rolls existed in the "form" listed in Jack County.**

Here, there is no dispute that the compressors listed on Jack's rolls were correctly described in their form as personal property, when the word "form" is defined to mean the property types listed in Tax Code Section 25.02(a) that specifies the "form and content" of appraisal records. *See* Tex. Tax Code Ann. § 25.02(a). The narrow remedy provided by the word "form" in Section 25.25(c)(3) again shows that J-W is not entitled to relief under the circumscribed remedy of a motion to correct. The word "form" is interpreted in a way to ensure that it does not create an exception that swallows the legislature's careful balance of the Tax Code remedies and the provisions of Section 25.25 itself. Otherwise, Section 25.25(c) could be used to challenge a host of appraisal decisions on tax treatment made years before, leaving in doubt the appraisal district's basic appraisal decisions upon which the district and the tax units it serves for those years as to what tax revenue they will have. To interpret Section 25.25(c) as J-W wants would abrogate the limitations of the Tax Code remedies that address that concern. J-W had broader protest remedies that would have been fully adequate to address its present contentions, but it forewent pressing those to conclusion and is now trying to fit itself into the narrow terms of Section 25.25(c)(3). Because of its choices, J-W self-limited the relief it could receive and tied itself to the terms of Section 25.25(c). We will not disrupt the carefully chosen terms of Section 25.25(c) to save J-W from its own decision.

60

Fundamentally, J-W argues that the DHEI valuation scheme broke a new dawn that requires us to interpret the words of Section 25.25(c)(3) in a new way and expand the definitions assigned to the term "form" (and "location") for decades. The most fundamental fallacy of this argument is that DHEI valuation may be new, but the presence of special appraisal provisions in the Tax Code that are exceptions to the default market-valuation approach of the Tax Code are not.[27] Nor are the definitions of "form" and "location" we have discussed. Yet, the legislature has not changed the words used in Section 25.25(c)(3) or imposed different definitions on those words when it made changes to the Tax Code's valuation and situs schemes, such as the very change that J-W highlights—the implementation of the DHEI valuation scheme. Though we can draw only slight inferences from the legislature's inaction, that inaction holds some sway in concluding that the legislature has not found the definitions of "location" and "form" that have been adopted by the courts to have upset the balance crafted by the legislature in the Tax Code's remedies. *See Asplundh Tree Expert Co. v. Abshire*, 517 S.W.3d 320, 335 n.7 (Tex. App.—Austin 2017, no pet.) ("Although inferences 'drawn from legislative inaction or acquiescence . . . are of questionable weight,' 'a slight inference can be drawn when a statute is interpreted by an appellate court and the legislature does not take corrective action.'" (citing and

---

[27]*See* Chapter 23 of the Texas Tax Code, which has provisions such as Section 23.16 (entitled "Intangibles of a Savings and Loan Association" and became effective in 1982); Section 23.127 (entitled "Retail Manufactured Housing Inventory; Value" and became effective in 1998); and Section 23.121 (entitled "Dealer's Motor Vehicle Inventory; Value" and became effective in 1994).

quoting *City of Athens v. MacAvoy*, 353 S.W.3d 905, 910 (Tex. App.—Tyler 2011, pet. denied))).

We overrule the remainder of J-W's second issue.[28]

## IV. Conclusion

Having overruled J-W's first, second, and fourth issues, but having sustained its third issue in part to the extent that the trial court erred by failing to order the removal from the Jack County Appraisal District appraisal rolls of the fourteen overlapping compressors that are referenced in Appendix A of this opinion, we reverse the trial court's judgment as to the following compressors as referenced by unit number: 3518, 4978, 3744, 2266, 5782, 4820, 5057, 3534, 3918, 5579, 5662, 5790, 5890, and 5905. We remand this matter to the trial court for a determination of any attorney's fees to be awarded and a calculation of any potential refund of taxes and interest. In all other respects, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: December 19, 2024

---

[28]In the final section of its brief, J-W argues that Jack cannot continue to argue that its motion to correct is barred by res judicata. As the brief states, "When asked 'whether res judicata bars J-W Power's [S]ection 25.25(c)(2) motions because those motions raise essentially the same complaints as J-W Power's prior, unsuccessful Chapter 41 protest[,'] the Supreme Court of Texas emphatically stated, '[T]he answer is no,'" and then the brief cites *Sterling Cnty. II*, 691 S.W.3d at 471. No holding in our opinion on remand relies on the doctrine of res judicata.

# Appendix A

Comparison of Agreed Judgment, Cause No. C45644 with Jack CAD Appraisal Roll (2013-2016)

| Palo Pinto Account # (See Exhibit 4, P's MSJ) | Unit # | Source for Unit # | Jack CAD Appraisal Roll 2013 | Jack CAD Appraisal Roll - 2014 | Jack CAD Appraisal Roll - 2015 | Jack CAD Appraisal Roll - 2016 |
|---|---|---|---|---|---|---|
| Unit#3958 - 68 HP w/Ariel, 1995 WAUK VRG-330 | 3958 | Agreed Judgment (Ex. 4, P's MSJ) | | | | |
| N000510832 | 3951 | P's MSJ, PDF Pg. 204 | | | | |
| N000512842 | 3398 | P's MSJ, PDF Pg. 205 | | | | |
| N000512854 | 3712 | P's MSJ, PDF Pg. 205 | | | | |
| N000512870 | 4274 | P's MSJ, PDF Pg. 205 | | | | |
| N000512879 | 3518 | P's MSJ, PDF Pg. 206 | | | | |
| N000512886 | 2556 | P's MSJ, PDF Pg. 206 | | D's MSJ, PDF Pg. 58 | D's MSJ, PDF Pg. 68 | D's MSJ, PDF Pg. 77 |
| N000512954 | 2617 | P's MSJ, PDF Pg. 206 | | | | |
| N000512973 | 3987 | P's MSJ, PDF Pg. 207 | | | | |
| N000512976 | 3413 | P's MSJ, PDF Pg. 207 | | | | |
| N000512977 | 3519 | P's MSJ, PDF Pg. 207 | | | | |
| N000512985 | 4405 | P's MSJ, PDF Pg. 208 | | | | |
| N000512986 | 4406 | P's MSJ, PDF Pg. 208 | | | | |
| N000512988 | 3496 | P's MSJ, PDF Pg. 208 | | | | |
| N000514354 | 3336 | P's MSJ, PDF Pg. 209 | | | | |
| N000514357 | 4568 | P's MSJ, PDF Pg. 209 | | | | |
| N000514360 | 3573 | P's MSJ, PDF Pg. 209 | | | | |
| N000514369 | 3345 | P's MSJ, PDF Pg. 210 | | | | |
| N000514372 | 3353 | P's MSJ, PDF Pg. 210 | | | | |
| N000514376 | 2347 | P's MSJ, PDF Pg. 210 | | | | |
| N000514377 | 2561 | P's MSJ, PDF Pg. 211 | | | | |
| N000514382 | 3392 | P's MSJ, PDF Pg. 211 | | | | |
| N000514390 | 3348 | P's MSJ, PDF Pg. 211 | | | | |
| N000514391 | 4144 | P's MSJ, PDF Pg. 212 | | | | |
| N000514392 | 3610 | P's MSJ, PDF Pg. 212 | | | | |
| N000514414 | 4005 | P's MSJ, PDF Pg. 212 | | | | |
| N000514439 | 3557 | P's MSJ, PDF Pg. 213 | | | | |
| N000514441 | 4090 | P's MSJ, PDF Pg. 213 | | | | |
| N000514442 | 4125 | P's MSJ, PDF Pg. 213 | | | | |
| N000514459 | 3249 | P's MSJ, PDF Pg. 214 | | | | |
| N000515695 | 4978 | P's MSJ, PDF Pg. 214 | | | | |
| N000515701 | 4434 | P's MSJ, PDF Pg. 215 | | | | D's MSJ, PDF Pg. 79 |
| N000517499 | 3275 | P's MSJ, PDF Pg. 215 | | | | |

2068

63

| Palo Pinto Account # (See Exhibit 4, P's MSJ) | Unit # | Source for Unit # | Jack CAD Appraisal Roll 2013 | Jack CAD Appraisal Roll - 2014 | Jack CAD Appraisal Roll - 2015 | Jack CAD Appraisal Roll - 2016 |
|---|---|---|---|---|---|---|
| N000566041 | 3533 | P's MSJ, PDF Pg. 216 | | | | |
| N000566047 | 4599 | P's 3rd Amended Petition, Cause No. C45644, 29th Judicial District, Pg. 19 | | | | |
| N000566068 | 3271 | P's MSJ, PDF Pg. 217 | | | | |
| N000569536 | 4598 | P's MSJ, PDF Pg. 217 | | | | |
| N000569537 | 3744 | P's MSJ, PDF Pg. 218 | D's MSJ, PDF Pg. 49 | | | |
| N000571749 | 637 | P's MSJ, PDF Pg. 234 | | | | |
| N000571756 | 1103 | P's MSJ, PDF Pg. 235 | | | | |
| N000571757 | 1774 | P's MSJ, PDF Pg. 237 | | | | |
| N000571762 | 1874 | P's MSJ, PDF Pg. 238 | | | | |
| N000571763 | 1920 | P's MSJ, PDF Pg. 239 | | | | |
| N000571768 | 2213 | P's MSJ, PDF Pg. 240 | | | | |
| N000571773 | 5389 | P's MSJ, PDF Pg. 293 | | | | |
| N000571774 | 2266 | P's MSJ, PDF Pg. 241 | | | | |
| N000571776 | 3411 | P's MSJ, PDF Pg. 255 | | | D's MSJ, PDF Pg. 79 | |
| N000571778 | 1105 | P's MSJ, PDF Pg. 236 | | | | |
| N000571779 | 3583 | P's MSJ, PDF Pg. 261 | | | | |
| N000571781 | 3706 | P's MSJ, PDF Pg. 263 | | | | |
| N000571782 | 3742 | P's MSJ, PDF Pg. 265 | | | | |
| N000571783 | 4024 | P's MSJ, PDF Pg. 268 | | | | |
| N000571785 | 4237 | P's MSJ, PDF Pg. 272 | | | | |
| N000571786 | 4500 | P's MSJ, PDF Pg. 276 | | | | |
| N000571787 | 4633 | P's MSJ, PDF Pg. 278 | | | | |
| N000571788 | 4660 | P's MSJ, PDF Pg. 279 | | | | |
| N000571791 | 4824 | P's MSJ, PDF Pg. 282 | | | | |
| N000571793 | 4145 | P's MSJ, PDF Pg. 270 | | | | |
| N000571794 | 4896 | P's MSJ, PDF Pg. 283 | | | | |
| N000571796 | 4899 | P's MSJ, PDF Pg. 284 | | | | |
| N000571797 | 5053 | P's MSJ, PDF Pg. 286 | | | | |
| N000571799 | 5139 | P's MSJ, PDF Pg. 288 | | | | |
| N000571800 | 5287 | P's MSJ, PDF Pg. 289 | | | | |
| N000571801 | 5292 | P's MSJ, PDF Pg. 291 | | | | |
| N000571802 | 5314 | P's MSJ, PDF Pg. 292 | | | | |
| N000571803 | 5649 | P's MSJ, PDF Pg. 294 | | | | |
| N000571804 | 5782 | P's MSJ, PDF Pg. 295 | | | D's MSJ, PDF Pg. 69 | D's MSJ, PDF Pg. 78 |

| Palo Pinto Account # (See Exhibit 4, P's MSJ) | Unit # | Source for Unit # | Jack CAD Appraisal Roll 2013 | Jack CAD Appraisal Roll - 2014 | Jack CAD Appraisal Roll - 2015 | Jack CAD Appraisal Roll - 2016 |
|---|---|---|---|---|---|---|
| N000571805 | 6348 | P's MSJ, PDF Pg. 297 | | | | |
| N000571807 | 6408 | P's MSJ, PDF Pg. 298 | | | | |
| N000571808 | 90024 | P's MSJ, PDF Pg. 299 | | | | |
| N000571815 | 3401 | P's MSJ, PDF Pg. 254 | | | | |
| N000571821 | 1110 | P's 3rd Amended Petition, Cause No. C45644, 29th Judicial District, Pg. 19 | | | | |
| N000571914 | 4820 | P's MSJ, PDF Pg. 280 | D's MSJ, PDF Pg. 52 | D's MSJ, PDF Pg. 61 | D's MSJ, PDF Pg. 71 | |
| N000571916 | 5057 | P's MSJ, PDF Pg. 287 | D's MSJ, PDF Pg. 48 | D's MSJ, PDF Pg. 57 | D's MSJ, PDF Pg. 67 | |
| N000571924 | 4180 | P's MSJ, PDF Pg. 271 | | | | |
| N000574296 | 3144 | P's MSJ, PDF Pg. 323 | | | | |
| N000574297 | 3368 | P's MSJ, PDF Pg. 330 | | | | |
| N000574298 | 3534 | P's MSJ, PDF Pg. 336 | D's MSJ, PDF Pg. 49 | D's MSJ, PDF Pg. 58 | D's MSJ, PDF Pg. 68 | |
| N000574299 | 3918 | P's MSJ, PDF Pg. 341 | D's MSJ, PDF Pg. 51 | D's MSJ, PDF Pg. 60 | D's MSJ, PDF Pg. 70 | |
| N000574300 | 4241 | P's MSJ, PDF Pg. 346 | | | | |
| N000574301 | 4290 | P's MSJ, PDF Pg. 348 | | | | |
| N000574302 | 4295 | P's MSJ, PDF Pg. 349 | | | | |
| N000574303 | 4398 | P's MSJ, PDF Pg. 350 | | | | |
| N000574304 | 4616 | P's MSJ, PDF Pg. 354 | | | | |
| N000574305 | 4875 | P's MSJ, PDF Pg. 355 | | | | |
| N000574306 | 5579 | P's MSJ, PDF Pg. 358 | D's MSJ, PDF Pg. 53 | D's MSJ, PDF Pg. 62 | D's MSJ, PDF Pg. 72 | |
| N000574307 | 5662 | P's MSJ, PDF Pg. 360 | D's MSJ, PDF Pg. 53 | D's MSJ, PDF Pg. 62 | D's MSJ, PDF Pg. 72 | |
| N000574308 | 5790 | P's MSJ, PDF Pg. 361 | D's MSJ, PDF Pg. 55 | D's MSJ, PDF Pg. 64 | D's MSJ, PDF Pg. 74 | D's MSJ, PDF Pg. 80 |
| N000574309 | 5890 | P's MSJ, PDF Pg. 363 | | D's MSJ, PDF Pg. 64 | D's MSJ, PDF Pg. 74 | |
| N000574311 | 5905 | P's MSJ, PDF Pg. 365 | | D's MSJ, PDF Pg. 65 | D's MSJ, PDF Pg. 75 | |

2070